**IN THE UNITED STATES DISTRCIT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MUHAMAD ALY RIFAI, M.D.

                    Plaintiff,                Case No: 5:24-cv-01242

V.

THE UNITED STATES DEPARTMENT
OF JUSTICE, ET AL.                Hon. Judge: Jeffrey L. Schmehl

                    Defendant,

---

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

---

Plaintiff Muhamad Aly Rifai, M.D. ("Dr. Rifai" or "Plaintiff"), by and through its

attorneys, CHAPMAN LAW GROUP, respectfully move this Court for a preliminary injunction

to enjoin Defendants Merrick B. Garland, in his official capacity as Attorney General of the United

States; the United States Drug Enforcement Administration ("DEA"); Anne Milgram, in her own

capacity as Administrator of the United States Drug Enforcement Agency ("DEA Administrator");

and the United States of America (collectively, the "Defendants") from violating Dr. Rifai's Fourth

Amendment rights and from subjecting him to an unconstitutional administrative process for the

reasons below and in Dr. Rifai's accompanying Memorandum in Support of Plaintiff's Motion for

Temporary Restraining Order and Preliminary Injunction. Fed. R. Civ. P. 65(a). It is further

requested that this Court set the hearing on this motion on an expedited schedule as set forth in

Fed. R. Civ. P. 65(b)(3).

This motion is based on the following grounds:

1.  On March 22, 2024, Plaintiff filed a verified complaint which addressed two (2) serious problems: 1) Defendants violated Plaintiff's Fourth Amendment protections against unlawful searches and 2) the DEA's current adjudicative structure is unconstitutional.

2.  Unless enjoined by this Court, Defendants will continue to infringe on Dr. Rifai's rights by subjecting him to its unconstitutional adjudicative processes, through which his constitutional rights were infringed. If this Court denies this motion, the constitutional violations at issue will have severe consequences in Dr. Rifai's administrative case.

3.  Pursuant to Fed. R. Civ. P. 65(a)(1), undersigned counsel for Plaintiff filed his complaint on March 22, 2024.

4.  As support for this motion, there is a substantial likelihood that Plaintiff will prevail in his Fouth Amendment claim as Defendants have exceeded its authority to issue warrantless administrative subpoenas established by *Camara* and its progeny. [1]

5.  Dr. Rifai's second issue relates to the constitutionality of the DEA's current adjudicative process and structure has a substantial likelihood of success as DEA Administrative Law Judges ("DEA ALJs") are "officers" not appointed or removed in accordance with the Appointments Clause[2] as required by *Lucia*[3].

6.  On June 30, 2023, the Supreme Court granted certiorari[4] on the Fifth Circuit case *Jarkesy*[5] and heard oral arguments on November 29, 2023. In *Jarkesy*, the Fifth Circuit held that the Securities and Exchange Commission's ("SEC") adjudicative process "deprived [Petitioner] of their Seventh Amendment right to a civil jury," that "Congress unconstitutionally delegated

---

[1] *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 530-31, 87 S. Ct. 1727, 1731-32 (1967).
[2] USCS Const. Art. II, § 2, Cl 2.
[3] *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018).
[4] *Securities and Exch. Comm'n v. Jarkesy*, 143 S. Ct. 2688 (2023).
[5] Transcript of Oral Arguments, *Securities and Exch. Comm'n v. Jarkesy*, 143 S. Ct. 2688 (2023) (No. 22-859).

legislative power to the SEC by failing to give the SEC an intelligible principle by which to exercise the delegated power," and that "the statutory removal restrictions of the SEC are unconstitutional…"[6] The Supreme Court will issue an opinion on these three (3) pertinent questions this year. Because of the significant effects this case will have on administrative law, continuing Dr. Rifai's administrative proceedings may cause Plaintiff to avail himself to these current and future constitutional violations by Defendants.

7. Dr. Rifai will suffer irreparable harm if an injunction is not granted. Deprivation of a constitutional right is enough to prove irreparable harm and justify injunctive relief.[7] Because the claims involve violations of constitutional rights, Plaintiff's only adequate remedy is through injunctive relief.

8. The public interest would be served by the issuance of an injunction, as "the public interest is best served by eliminating constitutional [violations]."[8]

WHEREFORE, Plaintiff Muhamad Rifai, M.D., under Fed. R. Civ. P. 65 and the Court's equitable powers, respectfully requests that this Court:

1. Grant Plaintiff's preliminary injunction and ancillary relief as may be necessary to enjoin Defendants from subjecting Dr. Rifai to its administrative processes, through which his constitutional violations arose, until the Supreme Court issues its opinion on *Jarkesy*;

2. Grant Plaintiff's temporary restraining order under Rule 65(a);

3. Conduct an expedited preliminary-injunction hearing where the parties may present witnesses and arguments to the Court on relief requested here in accordance with Fed. R. Civ. P. 65(b)(3);

---

[6] *Jarkesy v. SEC*, 34 F.4th 446, 465 (5th Cir. 2022)
[7] *Koons v. Reynolds*, 649 F. Supp. 3d 14, 42 (D.N.J. 2023).
[8] *Swartzwelder v. McNeilly*, 297 F.3d 228, 242 (3d Cir. 2002).

4.  Award Plaintiff reasonable attorneys' fees and costs; and

5.  Any other relief that the Court deems to be just and proper.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: May 16, 2024

/s/ *Ronald W. Chapman, II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
*Counsel for Plaintiff Muhamad Aly Rifai, M.D.*
1441 West Long Lake Road, Suite 310
Troy, Michigan  48098
T: (248) 644-6326
F: (248) 644-6324
RWChapman@ChapmanLawGroup.com

4

**IN THE UNITED STATES DISTRCIT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MUHAMAD ALY RIFAI, M.D.

                          Plaintiff,                  Case No: 5:24-cv-01242

V.

THE UNITED STATES DEPARTMENT
OF JUSTICE, ET AL.                 Hon. Judge: Jeffrey L. Schmehl

                       Defendant,

---

**PLAINTIFF MUHAMAD ALY RIFAI, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

Plaintiff Muhamad Aly Rifai, M.D. ("Dr. Rifai" or "Plaintiff"), by and through his counsel, CHAPMAN LAW GROUP, hereby file this Memorandum of Law in support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction against Defendants Merrick B. Garland, in his official capacity as Attorney General of the United States; the United States Drug Enforcement Administration ("DEA"); Anne Milgram, in her own capacity as Administrator of the United States Drug Enforcement Agency ("DEA Administrator"); and the United States of America (collectively, the "Defendants") to enjoin the Defendants from forwarding its unlawful administrative law process against Dr. Rifai, and to foreclose further communication between the Department of Justice related to Dr. Rifai's criminal case.

I.    **INTRODUCTION**

Plaintiff's action requires injunctive relief for two (2) reasons: to prevent Defendants from committing additional constitutional violations against Plaintiff, and to discontinue being subjected to an unconstitutional administrative process. Dr. Rifai's claims relate to a violation of

his Fourth Amendment protection against unreasonable searches from the DEA's 2023 warrantless administrative subpoena ("Subpoena") and by subjecting Plaintiff to administrative proceedings that the Supreme Court has ruled in identical scenarios to be unconstitutional.

Injunctive relief is further warranted given the pending Supreme Court opinion in *Jarkesy*. The Supreme Court's decision in *Jarkesy* is likely to create broad changes to the administrative system, and proceeding with the administrative hearing process despite the changes likely to occur post-*Jarkesy* would waste valuable time and resources for both our client and the administrative tribunal. Rather, moving forward with this administrative action, currently set to begin on June 10, 2024, we respectfully ask this Court to enjoin these proceedings and its associated deadlines until the *Jarkesy* opinion has been released.

First, Dr. Rifai's Fourth Amendment protection against unreasonable searches was violated by Defendants. The Fourth Amendment "guarantees the right of the people to be secure…against unreasonable searches." U.S. Const. amend. IV. Despite the endless number of statutes and regulations contrary to the Fourth Amendment, the Constitution and its Amendments must still be enforced. With very few exceptions, a warrant signed by a judge or magistrate is required for a search to be considered reasonable.[9] But an exception was created for administrative agencies "to allow for warrantless searches when the requirement of a warrant would frustrate effective enforcement of the [regulation]." *See Donovan v. Dewey*, 452 U.S. 594, 603, 101 S. Ct. 2534, 2540 (1980). In 1978, the Supreme Court gave a warning about potential misuse of the administrative agency exception in *Barlow's*: "The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323, 98 S. Ct.

---

[9] *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

1816, 1825-26 (1978). The Supreme Court highlighted its past limit to the use of the administrative agency exception, explaining that "the Warrant Clause applies to inspections for compliance with regulatory statutes." *Id*. As explained below, the DEA's use of administrative subpoenas has strayed beyond the original purpose for the exception. Thus, the DEA's Administrative Subpoena here is an unconstitutional use of administrative powers that infringed on Plaintiff's protection against unreasonable searches.

Supreme Court precedent already supports Dr. Rifai's claim against the structure and processes used by the DEA. In *Lucia*, the Supreme Court ruled that Securities and Exchange Commission's Administrative Law Judges ("SEC ALJs") are considered "officers" subject to the Appointments Clause. *Lucia,* 138 S. Ct. at 2055. For its analysis, the Supreme Court implemented the test established in *Freytag*. *Lucia*, 138 S. Ct. at 2053. Under *Freytag*, the Court must answer two (2) questions: whether an administrative law judge maintains their position temporarily or continuously, and if the position is continuous, whether the administrative judge holds significant authority. *Id*. at 2052. Because SEC ALJs were appointed for life, the *Lucia* Court confirmed that SEC ALJs positions were continuous. *Id*. at 2053. The Court then considered whether the SEC's ALJs held significant authority. *Id*. To answer this question, the *Lucia* Court looked to the authorities and powers proscribed to ALJs by statute and, after finding that SEC ALJs hold "nearly all the tools of federal trial judges," ruled that they also maintained significant authority. *Id*. Below, Plaintiff explains fully the parallels between SEC ALJs and DEA ALJs. The *Lucia* Court held that SEC ALJs are unconstitutionally appointed, reversing the lower court, and remanding for a new administrative hearing once the SEC's rules become compliant with the Court's holding. *Id*. at 2056.

The Supreme Court is now reviewing the Fifth Circuit case *Jarkesy*. Regardless of the outcome, the Supreme Court's decision may radically change the administrative system. The issues pending before the Court are: 1) whether administrative hearings violate the Seventh Amendment's right to a jury trial; 2) the constitutionality of administrative law judges, 3) and the validity of Congress's wide grant of authority to allow administrative agencies the discretion to choose whether to bring a case in front of its ALJ or an Article III court. The eventual holding in *Jarkesy* will recast this case. If Appellee Jarkesy succeeds in this appeal, the Supreme Court will dismantle the administrative process brought against Plaintiff.

For these reasons, and in accordance with the application for temporary restraining order and preliminary injunction filed, Plaintiff respectfully asks this Court to issue an immediate order to enjoin Defendants from the administrative hearing currently scheduled to commence on June 10, 2024 until the *Jarkesy* opinion is released by the Supreme Court.

## II.   STATEMENT OF RELEVANT FACTS

Defendants made their goal clear: to unjustly punish Dr. Rifai by any means necessary. *See*, Complaint, *infra*. Since at least September 2023, the DEA has engaged in a concerted effort with local and federal agencies to eliminate Dr. Rifai's ability to practice medicine. On September 26, 2023, Dr. Rifai was served an Administrative Subpoena ("Subpoena") by Diversion Investigator Austin T. Lastoskie ("DI Lastoskie").[10] The Subpoena served by DI Lastoskie requested only one (1) patient file: patient Gretchen Davis. Then, after serving the Subpoena on Dr. Rifai's counsel, two (2) DEA agents entered Dr. Rifai's place of business and threatened Dr. Rifai with incarceration if he did not comply with the Subpoena. Within the Subpoena itself, several red flags arose, such as a broad reference to an undisclosed "criminal investigation," citing

---

[10] Exhibit A, Administrative Subpoena.

Plaintiff's criminal case number in the Subpoena's header, and the compulsory language of the Subpoena.[11] Due to these glaring issues, Plaintiff's undersigned counsel contacted DI Lastoskie and requested confirmation that the materials provided were only to be used in an administrative action.[12] DI Lastoskie confirmed, assuring Plaintiff's counsel of the documents limited scope. *Id.* Accordingly, Dr. Rifai delivered the documents to the DEA on October 10, 2023, with the disclaimer that despite DI Laskoskie's assurances, any use of the documents "for the purpose of obtaining information for a criminal case and circumventing the 4th Amendment warrants requirement" will be met with "appropriate action".[13] At this time, Dr. Rifai's criminal trial had just been continued, with trial being reset to commence on January 10, 2024.

On November 30, 2023, the DEA submitted its Order to Show Cause ("OTSC") against Dr. Rifai.[14] There, the DEA alleged that Dr. Rifai defied several requirements set by the DEA and the State of Pennsylvania during his treatment of Patient "Gretchen Davis."[15] In the OTSC, the DEA revealed that the patient "Gretchen Davis" was undercover police officer Gretchen Kraemer ("Investigator Kraemer") sent to Dr. Rifai's practice, Blue Mountain Psychiatry, LLC, as part of a joint investigation between the DEA and local police. According to the OTSC, Investigator Kraemer undertook three (3) separate undercover visits on the following dates: May 17, 2021, June 11, 2021, and August 9, 2021. Dr. Rifai's last contact with "Gretchen Davis" was through a letter where Dr. Rifai informed the so-called "patient" that he could no longer treat her, but would recommend other psychiatrists and wished her well. Following this brief investigation, the DEA made the conscious decision *not* to seek revocation of Dr. Rifai's DEA registration.

---

[11] Exhibit A, Administrative Subpoena.
[12] Exhibit B, Email Exchange.
[13] Exhibit C, Letter Response to Subpoena.
[14] Exhibit D, Order to Show Cause.
[15] *Id.*

5

From August 2021 to September 2023 this investigation remained dormant at the DEA. It is questionable whether an administrative case had been opened against Dr. Rifai, as all recordings produced by the DEA specifically reference Dr. Rifai's criminal case number but no other pending investigation, as the Subpoena would have anyone believe. If this is correct, then the initial investigation was created solely to investigate Dr. Rifai for a criminal purpose likely in coordination with the Eastern District of Pennsylvania's US Attorneys' Office. The attorneys involved in prosecuting Dr. Rifai did not find a criminal amount of culpability, which is apparent given the indictment charged only four (4) counts of health care fraud in violation of 18 U.S.C. § 1347, which was brought to trial and ultimately resulted in a full acquittal of all charges. Because Dr. Rifai violated none of the offenses alleged by the DEA, upon request Dr. Rifai declined to voluntarily surrender his DEA registration. Consequently, Dr. Rifai requested a hearing on this matter December 28, 2023.[16]

Dr. Rifai again emphasizes that the DEA waited *over two (2) years* to issue this OTSC despite its current claim that Dr. Rifai is a danger to public health, safety, and welfare and must be stripped of his registration. This two (2)-year delay before taking serious action to deprive a professional of their profession serves as evidence of the DEA's underlying motives to trap Dr. Rifai to either lose his DEA registration or face conviction at his criminal trial.

Dr. Rifai's criminal trial was continued again to begin on February 27, 2024, with all remaining pretrial motions, including motions *in limine*, to be filed by February 12, 2024. Dr. Rifai recalled that on January 5, 2024[17], Assistant United States Attorney Joan Burnes ("AUSA Burnes") notified Dr. Rifai's criminal counsel that they had received information and evidence of potential criminal violations by Dr. Rifai. AUSA Burnes then expressed her intention to use this information

---

[16] Request for administrative hearing.
[17] R. 41, Page 3 of 31, Response to Government's Motion *in Limine*.

and evidence to prove prior bad acts at Dr. Rifai's criminal trial under Fed. R. Evid. 404(b).[18][19] On April 23, 2024, this Court granted in part the Government's motion *in limine*, which allowed the Government to display the video and audio recordings of the undercover investigation as well as allowing Investigator Kraemer to testify to the investigation. The jury returned after one (1) day of deliberation and found Dr. Rifai not guilty of all charges on May 8, 2024.

Before Investigator Kraemer took the stand on May 6, 2024, AUSA Burnes informed Dr. Rifai's criminal counsel that a fourth interaction between Investigator Kraemer and Blue Mountain Psychiatry took place on April 27, 2021, but that any recording that may have existed has since been lost or destroyed. Dr. Rifai notified undersigned counsel of this new information on May 6, 2024, as the DEA claimed several times that Investigator Kraemer's first interaction with Blue Mountain Psychiatry was on May 17, 2021. Given the relevance of this information coupled with the DEA's misrepresentations to the Tribunal and the impending administrative hearing scheduled to commence on May 20, 2024, Respondent requested the DEA's concurrence on a motion to continue the administrative hearing while further investigation into this material change in facts is conducted.[20] Shockingly, the Government objected to Dr. Rifai's request for a continuance, claiming that Dr. Rifai has no right to discovery or *Jencks* materials, that Dr. Rifai had known of the April 27, 2021 appointment and understood that no recording existed, and because of this Dr. Rifai's administrative hearing should proceed as scheduled.[21] On May 13, 2024, the presiding ALJ granted Dr. Rifai's motion in part and continued the administrative hearing to June 10, 2024.[22]

---

[18] R. 33, Government's Motion to Admit Audio and Video Tape Recordings.
[19] R. 37, Government's Motion in Limine.
[20] Exhibit E, Respondent's Motion to Continue Administrative Hearing.
[21] Exhibit F, DEA's Response to Respondent's Motion to Continue Administrative Hearing.
[22] Exhibit G, Order Granting Motion to Continue Administrative Hearing.

As a result, Dr. Rifai files this motion to enjoin Defendants from continuing to violate Dr. Rifai's Fourth Amendment rights and to cease the unconstitutional administrative hearing process until the Supreme Court issues its opinion on *Jarkesy*. Without such relief, Dr. Rifai's constitutional rights will continue to endure the unconstitutional proceedings controlled by the DEA and its ALJs.

### III.   <u>ARGUMENT</u>

Preliminary injunctive relief is necessary here to stop ongoing, irreparable harm that continues to afflict Dr. Rifai. Dr. Rifai has already experienced significant harm by the actions taken by Defendants, as he has been subjected to an unconstitutional administrative process which stems from an unconstitutional search of his patient records. But without swift relief now, Dr. Rifai will suffer further serious harm through the unjust removal of his DEA registration. Therefore, for the reasons stated in this motion, this Court should grant Dr. Rifai injunctive relief.

*A. Legal Standard*

Preliminary injunctive relief is necessary here to stop ongoing, irreparable harm that has and continues to be inflicted on Dr. Rifai.

"[T]he underlying purpose of a preliminary injunction is to ensure that the parties do not change the underlying facts in an 'irreparably harmful' way before a court has the opportunity to decide a case on the merits." *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 586 (E.D. Pa. 2017). "If there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction required by Rule 65(a) can be held, a temporary restraining order may be available under Rule 65(b)." *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 588 (W.D. Pa. 2009). "Courts within this Circuit have noted the similarities between a TRO and a preliminary

8

injunction, and have applied the same standards in determining their application." *Harper v. Corizon*, No. CIV.A. 14-639, 2015 WL 158798, at *3 (E.D. Pa. Ja. 12, 2015).

To obtain a preliminary injunction, the moving party must first show "a reasonable probability of eventual success in the litigation" and "that the movant will be irreparably harmed…if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). "If the moving party has established the first two 'critical' factors, [] the district court then performs a 'balancing of the factors' to determine whether the prongs, 'taken together, balance in favor of granting the requested preliminary relief.'" *Osorio-Martinez v. AG U.S.*, 893 F.3d 153, 178 (3d Cir. 2018) (internal citations omitted). "The strength of the plaintiff's showing with respect to one [factor] may affect what will suffice with respect to another." *Marxe v. Jackson*, 833 F.2d 1121, 1128 (3d Cir. 1987). When there is significant imminent harm at stake, such as the First Amendment in *Reilly* or the Fourth Amendment here, an even lesser showing is required for a claim on the merits. *See Reilly*, 858 F.3d at 179.

Plaintiff will meet each factor to receive injunctive relief. Because of the DEA's unchecked powers, Defendants have abated Dr. Rifai's ability to question the Subpoena and withhold testimony that has already been used in his criminal trial in front of this Court. Yet this process, which often infringes on citizen's constitutional rights, continues to operate under the guise of a legitimate adjudicative system. But much like *Lucia* and its progeny, the DEA's removal procedures are constitutionally defunct as it contradicts the Appointments Clause; continuing to subject Dr. Rifai to an unconstitutional system, especially one (1) that has proven its willingness to disregard constitutional mandates, risks serious and irreparable harm. Dr. Rifai further has been subjected to these proceedings with the impression that all evidence of alleged wrongdoings was presented to him in the OTSC. Yet only during his criminal trial was Dr. Rifai notified of a fourth

undercover appointment, which is directly relevant to the misconduct the DEA now alleges. Because of this late disclosure, Dr. Rifai is left without an opportunity to investigate this fourth appointment. All this considered with the pending *Jarkesy* case requires an injunction to be granted against the current administrative law proceedings.

**FIRST FACTOR: The Plaintiffs are Likely to Succeed on the Merits of Their Claims.**

Here, we have a warrantless criminal search cloaked as an administrative subpoena. Looking first to the violation of Plaintiff's Fourth Amendments, the DEA, acting through DI Laskoskie, issued the warrantless Subpoena outside the scope of the administrative subpoena exception. Given the unreasonable intrusion into an area Dr. Rifai has a reasonable expectation of privacy in, the Subpoena itself should be found unconstitutional. But even more troubling is the use of this Subpoena., as it was served on Dr. Rifai at the precipice of a criminal case, contrary to the restrictions placed on DEA administrative subpoenas. As such, Dr. Rifai has shown a reasonable likelihood of success on his Fourth Amendment claim.

**1. Dr. Rifai Will Succeed in His Fourth Amendment Claim.**

The Fouth Amendment "guarantees the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Administrative searches for evidence of crime are encompassed by the Fourth Amendment. *Michigan v. Tyler*, 436 U.S. 499, 505-06, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). Although not enumerated in the Fourth Amendment, this right has since been extended to commercial premises. *See Marshall v. Barlow's, Inc.*, 436 U. S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978). The general rule is that searches "without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment…" *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct.

10

507, 19 L. Ed. 2d 576 (1967). But there are "a few specifically established and well-delineated exceptions" to the general warrant requirement. *Id*.

One (1) such exception was created for administrative agencies, which gave agencies the ability to issue warrantless administrative subpoenas when "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 533, 87 S. Ct. 1727 (1967). But for such administrative subpoenas to be valid, the "primary purpose of warrantless searches must be distinguishable from the general interest in crime control" *City of Indianapolis v. Edmond*, 531 U.S. 32, 44, 121 S. Ct. 447, 455 (2000) (internal citations omitted). Stated another way, courts should consider whether the statute used to conduct the warrantless search serves a "special need" other than "conducting criminal investigations, such as ensuring compliance with the recordkeeping requirement, which in turn deters criminal activity on a premises." *City of L.A. v. Patel*, 576 U.S. 409, 419, 135 S. Ct. 2443, 2452 (2015). Without appropriate constraints, an administrative agency would be granted "almost unbridled discretion" to search whatever it pleased, which the Court vehemently opposed by highlighting that "the Warrant Clause applies to inspections for compliance with regulatory statutes." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323, 98 S. Ct. 1816, 1825-26 (1978).

When created, the use of the administrative search exception was only meant to be used in limited circumstances. In *Patel*, the administrative search exception was discussed approvingly when used for "routine inspections to ensure compliance with a regulation and not simply for conducting criminal investigations." *Patel*, 576 U.S. at 420 (citing Camara v. Mun. Court of S.F., 387 U.S. 523, 534, 87 S. Ct. 1727 (1967)). One (1) reason the Court created this exception was because these routine searches were "neither personal in nature nor aimed at the discovery of evidence of crime..." *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 537, 87 S. Ct. 1727, 1735

11

(1967). Since *Camara*, courts have permitted the use of warrantless administrative subpoenas to investigate potential criminal activity. *See United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993); *United States v. Hossbach*, 518 F. Supp. 759, 766-67 (E.D. Pa. 1980); *United States v. Mountain States Tel. & Tel. Co., Inc.*, 516 F. Supp. 225, 229 (D.Wyo.1981). But these cases that condone the use of warrantless administrative subpoenas for purely criminal investigations share an overarching theme: the warrantless administrative subpoena into ongoing investigations are allowed "*so long as they [do not] run against the targeted individual.*" *United States v. Harrington*, 761 F.2d 1482, 1485 (11th Cir. 1985) (emphasis added). As *Abel v. United States* explains:

> The deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts. The preliminary stages of a criminal prosecution must be pursued in strict obedience to the safeguards and restrictions of the Constitution and laws of the United States.

*Abel v. United States*, 362 U.S. 217, 226, 4 L. Ed. 2d 668, 80 S. Ct. 683 (1960); *See also*, *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316, 98 S. Ct. 2357, 57 L. Ed. 2d 221 (1978) ("[U]se of an administrative subpoena solely to gather evidence would not be valid); *United States v. Hossbach*, 518 F. Supp. 759, 766-67 (E.D. Pa. 1980) (administrative subpoenas under 21 U.S.C. § 876 may be used in furtherance of a purely criminal investigation when issued to third parties *and not targeted individuals*). In summation, even in cases where a warrantless administrative subpoena may be used to investigate the target of a criminal investigation or a criminal defendant, the administrative subpoena may be issued only to third parties and cannot be issued directly against the targeted individual or criminal defendant.

The DEA cites to 21 U.S.C. § 876 as its authority to issue this Subpoena. 21 U.S.C. § 876 provides, in part:

> In any investigation relating to his functions under this subchapter with respect to controlled substances, the Attorney General may

12

> subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

*United States v. Hossbach*, 518 F. Supp. 759, 765 (E.D. Pa. 1980). The powers granted by Congress are extensive as this statute was "intended [to serve] as a comprehensive federal program to place certain drugs and other substances under strict federal controls to be administered by the Attorney General." *Id*. Broad investigatory discretion was also granted to the DEA by § 876, granting it criminal and civil enforcement duties. *Id*.

The DEA exceeded its subpoena powers when it served this criminal Subpoena directly to Dr. Rifai to further its criminal investigation. In 2021, the DEA entered a joint investigation with local police to send in an undercover agent to investigate whether Dr. Rifai had broken the law. Given the November 2022 indictment against Dr. Rifai and the Subpoena's reference to the criminal case number, this operation was done in coordination with the United States Attorney's Office. Then, over two (2) years following the conclusion to the undercover operation and on the eve of Plaintiff's criminal trial, the DEA issued this criminal Subpoena seeking the undercover officer's patient records to investigate whether criminal conduct occurred. This claim is supported by the Subpoena at issue, speaks for itself by stating that the documents are relevant to *an ongoing criminal investigation* and bore Dr. Rifai's ongoing criminal case number. Then, after Dr. Rifai chose to fight the accusations that he committed a crime, the DEA shared the contents of the investigation and Dr. Rifai's production with Assistant United States Attorney Joan Burnes who then used this information as evidence of prior bad acts under Fed. R. Evid. 404(b). Given this information and the DEA's assistance in an adjacent criminal matter, the Subpoena served one (1) solitary purpose: to secure evidence of a crime and admissions or silence from defendant to use in

13

a criminal proceeding. This was not a routine inspection, but is personal against Plaintiff, aimed specifically to discover evidence of a crime. Pertaining specifically to post-indictment criminal defendants, the precedent is clear: the DEA may subpoena pursuant to a criminal investigation but *cannot subpoena the criminal defendant*. *Hossbach*, 518 F. Supp. 759, 766-67. Because of this, the DEA exceeded the administrative agency exception to the warrant requirement when served Dr. Rifai with a warrantless Subpoena to further a criminal investigation. Because the Subpoena was served on Dr. Rifai, a criminal defendant, DI Lastoskie's misrepresentation that the Subpoena did not relate to the criminal proceedings coupled with the unambiguous language which precludes the use of administrative subpoenas in this case, Dr. Rifai trusted the Government and complied with the Subpoena.

Retrospectively, the end goal of the Subpoena is now obvious: to circumvent Dr. Rifai's Fourth Amendment right. Consequently, Dr. Rifai has shown a reasonable likelihood of success on his Fourth Amendment claim.

**2. Dr. Rifai has a Reasonable Probability of Success on His Claim That the DEA's Adjudication Process Is Unconstitutional.**

Relating to the unconstitutional structure of the DEA's adjudicative process, a *prima facie* case has been made to support an injunctive remedy. The Supreme Court's analysis in *Lucia v. SEC* best illustrates the strength of Plaintiff's case. There, the Court employed the two (2)-part *Freytag* test to distinguish between officers and employees. *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018). This two-part test asked: 1) whether the individual's duties were "occasional or temporary" or "continuing and permanent," and 2) if the members of a federal commission were officers if they exercised significant authority under the laws of the United States. *Id*.

Focusing on the second portion of the test, the Court held that a showing of significant discretion when conducting important functions fulfills the second requirement. *Id*. at 2053

14

(internal citations omitted). As support for its finding that Securities and Exchange Commission's Administrative Law Judges ("SEC ALJs") are officers rather than employees, the Court noted that SEC ALJs hold "the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges." *Id*. As part of this analysis, the Court felt it necessary to mention four (4) specific powers held by SEC ALJs and Tax Court STJs: the ability to take testimony, conduct trials, rule on the admissibility of evidence, and the power to enforce compliance with discovery orders. *Id*. The Court found that the ability to exercise its discretion to conduct such important functions fulfills the second prong of the *Freytag* test.

Just as in *Lucia*, DEA ALJs continuously hold their offices and the relevant statutes do not proscribe a specific ability to remove DEA ALJs, establishing that DEA ALJs "continuously" hold their positions. Turning to the second requirement, DEA ALJs are granted the authority, through 5 U.S.C. § 556(c), to administer oaths and affirmations, issue subpoenas authorized and enforceable by law, rule on offers of proof and receive relevant evidence, regulate the course of the hearing, to take depositions or have depositions taken when the evidence of justice would be served, among other important powers. As referenced in *Lucia*, these powers are "nearly identical to the tools of federal trial judges." *Id*. at 2048. In light of the Supreme Court's ruling in *Lucia*, DEA ALJs are "officers" rather than employees. Further, because there are no appointment powers by the DEA or the President, DEA ALJs are unconstitutionally appointed in violation of the Appointments Clause.

As explained above, the Supreme Court will issue an opinion on *Jarkesy* soon. Given the potential consequences of the Supreme Court's opinion, the entire administrative process may be ruled unconstitutional. This decision should be published in, at most, two (2) months. Any delay awaiting the Supreme Court's *Jarkesy* opinion is minor when compared to the two (2) years it took

15

the DEA to bring this action and would also conserve considerable resources and uphold judicial economy on behalf of the administrative system and on behalf of Plaintiff Dr. Rifai.

For these reasons, Plaintiff is likely to succeed on the merits of each of his claims.

**SECOND FACTOR: The Plaintiff Will Suffer Irreparable Harm If Injunctive Relief Is Not Granted.**

When dealing with constitutional violations and the unconstitutional operations of large government bodies, Dr. Rifai will be one (1) of the many Americans who have and will continue to suffer irreparable harm if an injunction is not granted.

"In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. Economic loss does not constitute irreparable harm." *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir. 1994). Put another way, irreparable harm is an injury that payment of money after the fact cannot solve, making it a harm that "must be of a peculiar nature." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Not only must the harm be irreparably, but it must be "likely in the absence of an injunction." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). That said, "[a] deprivation of a constitutional right can demonstrate irreparable injury justifying injunctive relief, and 'most courts hold that no further showing of irreparable injury is necessary.'" *Koons v. Reynolds*, 649 F. Supp. 3d 14, 42 (D.N.J. 2023); see also *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997) ("Having concluded that requiring plaintiffs to file their petitions by April 10 likely violates their constitutional rights, it clearly follows that denying them preliminary injunctive relief will cause them to be irreparably injured.").

Further, the Third Circuit has long maintained that "harm to reputation and goodwill constitutes irreparable harm." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3d Cir. 2014); see also *Pappan Enters. Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805

16

(3d Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."). Here, forcing Dr. Rifai to continue to defend his name based on an unconstitutional administrative search warrant in an administrative hearing process that may be found unconstitutional by the Supreme Court in *Jarkesy* unnecessarily risks harm to Dr. Rifai's character and loss of ability to practice medicine. As a psychiatrist, Dr. Rifai regularly prescribes his patients controlled substances. Benzodiazepines, more commonly known by their brand names Xanax, Ativan, Klonopin, and Valium, are necessary to treat patients suffering from anxiety, depression, suicidal thoughts, bipolar disorder, and other psychiatric issues. Stimulants, such as Adderall or Ritalin, are also commonly prescribed by psychiatrists for attention deficit hyperactivity disorder (ADHD) and narcolepsy, and may also be used to treat depression, anxiety, and bipolar disorder. Moving forward with the administrative hearing to revoke Dr. Rifai's DEA registration risks stripping Dr. Rifai from prescribing these drugs, which consequently removes Dr. Rifai's ability to effectively treat his patients. The potential harm caused by the pending administrative hearing is furthered by the loss of Dr. Rifai's practice, Blue Mountain Psychiatry, LLC, which primarily serves underrepresented areas. Not only will Dr. Rifai lose his practice if the administrative hearing moves forward, but the consequences will reverberate throughout the community. Lastly, Dr. Rifai is currently defending the quality of his medical treatment. The DEA's rush to the administrative hearing before *Jarkesy* is adjudicated and further investigation into the April 27, 2021 appointment compels Dr. Rifai to defend his reputation while key facts of the case are withheld. And if the pending *Jarkesy* opinion does reach the predicted conclusion of a radical change to the administrative law system, any revocation of Dr. Rifai's DEA registration would likely be re-litigated. But the toothpaste would already be out of the tube, and the serious

17

harm to Dr. Rifai's reputation following the revocation of his DEA registration would be irreparable.

Plaintiff's actions involve the violation of his Fourth Amendment rights and questions the constitutionality of the DEA's adjudicative process. Moreover, Dr. Rifai's recent discovery of material information related to this administrative case deserves ample time to investigate and further prepare rather than a rushing forward with an administrative hearing just for the sake of an administrative hearing. Just as in *Koons*, deprivation of Dr. Rifai's constitutional rights establishes irreparable harm and therefore justifies injunctive relief.

**THIRD FACTOR: The Balance of Equities Favors the Plaintiffs.**

The Third Circuit has viewed the third factor for preliminary injunction as weighing "the likely harm the movant (absent a stay) against the likely irreparable harm to stay opponent(s) if the stay is granted." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015); *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017). Spoken more clearly, balancing of equities is "jurisprudential jargon for choosing between conflicting public interests." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1943).

Dr. Rifai will suffer serious and immediate harm without a preliminary injunction. Here, Defendants' alleged harms are nothing but hypothetical harms that have not and will not occur. After practicing medicine for over two (2) decades, this is the first allegation of improper prescribing against Dr. Rifai. Any supposed "risk of harm" stemming from Dr. Rifai maintaining his DEA registration during the pendency of this injunction would be nullified given the agency's inaction for *over two (2) years* before bringing this OTSC. For Plaintiff, several harms would occur if this injunction is not granted. First, Dr. Rifai will remain forced to participate in an unconstitutional DEA adjudicative process. Second, Dr. Rifai's Fourth Amendment rights will

18

continue to be infringed on, all for the improper purpose of supporting the government in his criminal matter. Third, removal of Dr. Rifai's DEA Registration would prohibit him from practicing psychiatry, which not only would affect Dr. Rifai financially but would eliminate his ability participate in his profession and would harm his patients who need the prescriptions they would suddenly be deprived of. Fourth, removal of Dr. Rifai's DEA registration, even temporarily, would destroy his reputation in the community and would risk Dr. Rifai from permanently ostracizing him from his small town.

Given the reasons mentioned above, the balance of equities favors Plaintiff.

**FOURTH FACTOR: An Injunction Will Serve the Public Interest.**

The fourth prong requires this Court to determine whether injunctive relief is in the public interest. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Freedom Def. Initiative v. SEPTA*, 92 F. Supp. 3d 314, 330 (E.D. Pa. 2015) (citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017). When determining whether the injunction will serve the public interest, courts should assess "whether a stay decision has consequences beyond the immediate parties." *In re Revel AC, Inc.,* 802 F.3d 558, 568-69 (3d Cir. 2015).

Dr. Rifai's constitutional rights have and continue to be violated by Defendants. Without protection of these rights guaranteed by the United States Constitution, the government would be free to act without restraint against its citizens. Thus, the protections these rights guarantee, and are now being withheld from Dr. Rifai, will be unavailable to Dr. Rifai if the DEA is not enjoined from continuing these proceedings. Administrative subpoenas will continue to be used to circumvent Americans Fourth Amendment protections. An injunction here will do no harm to

19

Defendants but will allow Dr. Rifai to continue to treat patients in his community and maintain his constitutional protections. There is no legitimate argument Defendants can make against the public interest.

Thus, the fourth element for injunctive relief is met and such relief should be granted.

## IV.    **CONCLUSION**

For these reasons, this Court should grant the Plaintiffs' motion for temporary restraining order pending a full evidentiary hearing on its motion for a preliminary injunction.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: May 16, 2024

/s/ *Ronald W. Chapman, II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
*Counsel for Plaintiff Muhamad Aly Rifai, M.D.*
1441 West Long Lake Road, Suite 310
Troy, Michigan  48098
T: (248) 644-6326
F: (248) 644-6324
RWChapman@ChapmanLawGroup.com

20

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2024, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

/s/ *Ronald W. Chapman, II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
*Counsel for Plaintiff Muhamad Aly Rifai, M.D.*

21