# Exhibit A

**UNITED STATES DEPARTMENT OF JUSTICE**

**Drug Enforcement Administration**

| | |
|---|---|
| In the Matter of<br><br>**Muhamad Aly Rifai, M.D.** | **Docket No. 24-22** |

**ORDER VACATING STAY AND TERMINATING PROCEEDINGS**

## I. Procedural History

This case was initiated on December 28, 2023, when Respondent Muhamad Aly Rifai, M.D. filed a Request for Hearing in response to the Government's Order to Show Cause (OSC) seeking to revoke Respondent's DEA Certificate of Registration based on allegations that, on at least three occasions, Respondent issued prescriptions for controlled substances to an undercover officer outside the usual course of professional practice and not for a legitimate medical purpose. *See* OSC at 3-5, ¶¶ 3-6 (citing 21 U.S.C. § 841(a)(1); 21 C.F.R. § 1306.04(a); 28 Pa. Code § 25.52(a); 49 Pa. Code § 16.92(b); 35 Pa. Cons. Stat. § 780-111, 112).[1] This tribunal issued an Order for Prehearing Statements on December 29, 2023, conducted a Prehearing Conference on January 31, 2024, and issued a Prehearing Ruling on January 31, 2024.

At the Prehearing Conference, this tribunal advised Respondent that he could file a motion to stay these proceedings under *Axon Enter. v. FTC*, 598 U.S. 175, 143 S. Ct. 890 (2023), but this tribunal would only consider such a motion if it was accompanied by a filed district court complaint and satisfied the requirements of *Axon.* Both parties filed their respective Supplemental Prehearing Statements and exhibits in accordance with the Prehearing Ruling. On March 8, 2024, the Government filed a Motion to Preclude Testimony and Deem Responses in Answer as Admissions (Motion in Limine). The Prehearing Ruling set a deadline of March 15, 2024 to respond to filed motions. On March 15, 2024, Respondent filed a Motion to Extend Filing Deadline to Respond to DEA's Motion, requesting a one-week extension to file a response to the Government's Motion in Limine. Respondent's extension request was granted, and Respondent's response to the

[1] The controlled substance alleged in the OSC is dextroamphetamine-amphetamine 5 mg, under the brand name Adderall, which is a schedule II stimulant. OSC at 4-5, ¶¶ 4-6.

Government's Motion in Limine was due at 2:00 p.m. Eastern Time (ET) on March 22, 2024. Ord. Granting Resp't Extension Mot. at 1.[2]

On March 25, 2024, instead of filing a timely response to the Government's Motion in Limine, Respondent filed a Motion to Stay Administrative Proceedings Upon District Court Proceedings (First Stay Motion).[3] The First Stay Motion was a scant one page, making a conclusory statement that there were "grave Fourth and Fifth Amendment issues resulting from this administrative action," but providing no argument on those two non-structural challenges. Nor did the First Stay Motion identify any other grounds for a stay or address any of the well-established factors a tribunal considers in a stay request. *Id*. The Government opposed Respondent's First Stay Motion. Gov't Response in Opp'n to Respondent's Motion to Stay Administrative Proceedings Upon District Court Proceedings. In his First Stay Motion, Respondent misrepresented this tribunal's instructions at the Prehearing Conference, claiming that this tribunal had stated it would issue an automatic stay upon filing of a complaint. Resp't First Stay Mot. at 1. This was incorrect. *See* Gov't Response in Opp'n to Resp't First Stay Mot. at 1. As a result, Respondent offered no analysis for granting a stay, but simply attached the complaint filed in in the United States District Court for the Eastern District of Pennsylvania (District Court).

On April 17, 2024, this tribunal denied Respondent's First Stay Motion because it did not comply with the instructions provided by this tribunal at the January 31, 2024 Prehearing Conference and the motion to stay did not articulate a structural challenge to these proceedings sufficient to qualify for a stay under *Axon*; nor did it contain any analysis to support the stay request.[4] Ord. Denying Resp't Mot. to Stay at 3-4. In the April 17, 2024 Order, this tribunal

---

[2] This tribunal sets all deadlines for 2:00 p.m. ET to allow it to issue orders the same day, if necessary. The parties are well-aware of this practice.

[3] Respondent's First Stay Motion was filed after 5:00 p.m. ET on March 22, 2024, and thus it was deemed filed the following business day. *See* Ord. for Prehr'g Statements at 2-3 ("[d]ocuments shall be dated and deemed filed upon receipt by the Hearing Clerk.") (citing 21 C.F.R. § 1316.45)).

[4] In its Order Denying Respondent's Stay, this tribunal also took official notice of its appointment. Specifically, this tribunal stated: "Pursuant to 5 U.S.C. § 556(e) and 21 C.F.R. § 1316.59(e), this tribunal takes official notice of the fact that the undersigned was appointed as an ALJ by then-Attorney General William P. Barr on December 1, 2020." Ord. Denying Resp't Stay at 4 n. 6 (also citing Defendants' Motion to Dismiss the Complaint, Ex D, *Simfa Rose Pharm. Specialty, Inc. v. Garland*, No. 0:23-cv-61531 (S.D. Fla. Mar. 19, 2024), which contains the Attorney General's appointment letter)). This tribunal also provided that "[t]o the extent either party seeks to challenge the factual predicate of the official notice taken in this matter, that party may file an

indicated that it would consider a refiled motion to stay if Respondent properly presented an argument and analyzed the relevant factors for a stay in the body of the motion. *Id.* at 4. This tribunal specifically stated that, had Respondent followed its direction in the motion to stay, Respondent may have met his burden for obtaining a stay. *Id*. Despite this tribunal providing guidance as to what Respondent needed to address to obtain a stay of these administrative proceedings, Respondent did not refile the stay motion.

This tribunal continued to prepare for the merits hearing scheduled for May 20, 2024.[5] On May 2, 2024, this tribunal issued an order granting in part the Government's Motion in Limine and an Order Regarding Procedural Exhibits.[6] On May 13, 2024, this tribunal granted in part Respondent's Motion to Continue Administrative Hearing for a purpose unrelated to any *Axon* challenge, as explained in that Order, and rescheduled the merits hearing in this matter for June 10, 2024. *See* Ord. Granting in Part Resp't Request for Continuance at 4. In an email to chambers' staff on May 15, 2024, after the hearing was rescheduled for June 10, 2024, one of Respondent's attorneys—the only attorney for Respondent who appeared at the Prehearing Conference—provided information to chambers' staff regarding logistical information for witnesses (*see supra* n.5) and did not raise any objection or concern regarding the date of the hearing.

Nonetheless, Respondent filed a Second Motion to Continue Administrative Hearing on May 17, 2024 because a second attorney representing Respondent was unavailable on June 10, 2024. In that motion, there was no explanation as to why the first attorney could not handle this relatively discrete case on his own or why the first attorney did not indicate the unavailability of counsel when he responded that his witnesses would be available on June 10, 2024. *See* Ord. Denying Respondent's Section Mot. to Continue at 2. Moreover, one day before filing his second continuance motion, Respondent's counsel had filed an Emergency Motion for Temporary

---

appropriate motion no later than fifteen (15) days from the issuance of this order." *Id*. Neither party challenged this tribunal's official notice of these facts.

[5] On February 9, 2024, this tribunal issued a Notice of Hearing and Order Modifying Prehearing Ruling, rescheduling the hearing from April 29, 2024, to May 20, 2024. The Notice directed the parties to send information regarding their witnesses to chambers' staff no later than May 13, 2024. Chambers' staff sent an email requesting the information on May 6, 2024. Respondent's counsel did not provide the requested information by May 13, 2024, so chambers' staff sent a follow-up email on May 13, 2024. Respondent's counsel provided the information on May 15, 2024.

[6] This tribunal reminded Respondent again of the option to refile his stay request in the Order granting the Government's Motion in Limine. See Ord. Granting in Part Gov't Mot. to Preclude Testimony and to Deem Responses in Respondent's Answer as Admissions at 1 n.3.

Restraining Order and Preliminary Injunction (TRO Motion) in the District Court case, although he did not inform this tribunal of that motion, as this tribunal had requested. *See* Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, *Rifai v. United States Dep't of Justice*, No. 5:24cv1242 (E.D. Pa. May 16, 2024), ECF No. 7. The TRO Motion did not inform the District Court that this tribunal had offered Respondent an opportunity to refile for a stay of these proceedings, as long as Respondent complied with this tribunal's instructions. *See id.*

This tribunal denied the Second Motion for a Continuance on the grounds offered, but this tribunal noted that Respondent had filed the emergency TRO Motion with the District Court, even though he had been given the clear option to refile a corrected motion for a stay in these proceedings. Ord. Denying Resp't Second Motion to Continue at 1-2 n.1. Despite this reminder that Respondent could refile his stay motion and likely obtain relief if he followed this tribunal's directions, on May 24, 2024, Respondent filed a Request for Interlocutory Appeal, challenging only this tribunal's Order denying Respondent's second request for a continuance. *See* Resp't Request for Interlocutory Appeal at 1 (Respondent "hereby files his Request for Interlocutory Appeal from the Administrative Law Judge's order on May 20, 2024, denying Respondent's Second Motion to Continue"). In that Request, Respondent made two arguments, not addressed in Respondent's Second Motion to Continue, suggesting that Respondent still desired a stay of these proceedings, despite the continuance request.

At the same time, this tribunal independently became aware that the District Court had scheduled a status conference on the TRO Motion for May 31, 2024. In other words, Respondent, once again, failed to provide this tribunal with relevant information about the parallel District Court proceeding, as this tribunal had requested. As a result, this tribunal held a status conference on May 29, 2024 to resolve this confusion. At this status conference—which was for Respondent's benefit—Respondent's counsel (Mr. Chapman) was combative, at one point insisting he did not need to correct his deficient stay motion (despite this tribunal's Order) because this tribunal had obviously read the District Court complaint. Ultimately, this tribunal expressly asked Respondent's counsel if he was seeking a stay from this tribunal. When Respondent's counsel indicated he was, this tribunal issued an order setting deadlines for any such motion, consistent with this tribunal's directions in its April 17, 2024 Order. Ord. Regarding Resp't Mot. to Stay. Respondent's counsel (Mr. Chapman) specifically stated that he could, and would, file a stay

motion with this tribunal "tomorrow," meaning May 30, 2024. Given the pending status conference in the parallel civil proceeding, this tribunal set a deadline of 12:00 p.m. ET on May 30, 2024 for Respondent's motion, allowing the Government until 5:00 p.m. ET on May 30, 2024 for a response. *Id.* Respondent, however, did not file a stay motion or ask for additional time in which to file such a motion. This tribunal subsequently issued an Order Regarding Status Conference setting forth the procedural history in the case.

At 10:43 a.m. ET on May 31, 2024—a day after Respondent's counsel had indicated he would file the motion, and only after this tribunal issued the Order Regarding Status Conference noting the failure to file—Respondent filed a Second Motion for Stay. The Government filed an Opposition to the Second Motion to Stay on June 3, 2024. This tribunal granted Respondent's Second Motion to Stay on June 3, 2024. These proceedings were stayed until the case initiated by Respondent in the District Court raising a constitutional structural challenge to these proceedings is resolved. Ord. Granting Resp't Second Mot. to Stay at 1-2, 4 n.6. The Order Granting Respondent's Second Motion to Stay directed the parties to file a joint status report every sixty days, commencing sixty days from the issuance of the order on June 3, 2024. *Id.* at 4. That Order included the following instruction:

> To ensure that this tribunal acts in consonance with the directives of the District Court, the parties (either or both) are further directed to forthwith file any orders issued by the District Court and/or transcripts prepared in connection with the parallel litigation. Either party may file a single joint status report for both parties so long as it reflects the agreed understanding of both parties, but this obligation to have a joint status report filed by either party extends to both parties.

*Id*. at 4. Finally, this Order provided that: "These administrative enforcement proceedings are stayed, not dismissed or terminated. Failure to timely file a joint status report may result in the expeditious vacatur of this stay." *Id*. n.7.[7]

The first joint status report was due on August 2, 2024. At 5:22 p.m. ET on August 2, 2024, Respondent's counsel emailed chambers' staff explaining the current procedural posture of the District Court case and attaching two orders issued by the District Court. Respondent's counsel stated that "[o]n Monday [August 5, 2024] we will provide a filing for the record consistent with

---

[7] This tribunal also noted that it had taken official notice of is appointment by the Attorney General and "[n]either party filed a challenge to this official notice, and thus the facts regarding the undersigned's appointment are deemed established." Ord. Granting Resp't Second Mot. to Stay at 4 n. 5.

this email to ensure this information is on the record." Respondent did not file the status report on August 5, 2024. As with the Second Motion to Stay, Respondent, had, once again made a representation to this tribunal that he would file a pleading, and failed to do so.

On August 6, 2024, because neither party filed a joint status report, this tribunal issued an Order Directing Compliance, directing the parties to file a joint status report no later than 2:00 p.m. ET on August 7, 2024. This tribunal again reminded the parties that "[f]ailure to timely file a joint status report may result in the expeditious vacatur of [the] stay." Order Directing Compliance at 1 n.2. At 5:00 p.m. ET on August 7, 2024, three hours after the extended deadline, with an admonition of possible sanctions, Respondent filed a joint status report on behalf of both parties. The joint status report did not acknowledge that it was filed five days after the deadline set in the Order Granting Respondent's Second Motion to Stay and three hours after the deadline set in the Order Directing Compliance, let alone establish good cause for the late filing. Accordingly, this tribunal issued an Order to Show Cause for Untimely Status Report on August 9, 2024. The Order to Show Cause for Untimely Status Report directed the parties to file, either jointly or individually, a pleading showing cause as to why they did not file a timely status report. Ord. to Show Cause for Untimely Status Report at 2. On August 9, 2024, the Government filed its Response to the Order to Show Cause for Untimely Status Report (Gov't Response). Respondent filed his Response to the Order to Show cause on August 12, 2024 (Resp't Response).

## II. Discussion

### A. The Parties Fail to Establish Good Cause for the Untimely Filing of the Status Report

"[T]he Agency has interpreted the good cause standard in a manner that aligns it with the good cause standard of various federal rules of procedure." *Edge Pharmacy*, 81 Fed. Reg. 72092, 72096 (2016). Courts have generally refused to excuse late filings on the basis of "excusable neglect" when a party refuses to read, understand, or follow a rule. *See Weinstock v. Cleary, Gotlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (denying motion under Fed. Rule Civ. Proc. 4(a)(5) even though movant missed the deadline because of a misreading of the old Rule 4(a)(4), which was amended while the litigation was ongoing because of its reputation as a "'trap' for the unsuspecting litigant"); *United States v. Hooper*, 43 F.3d 26, 28-29 (2d Cir. 1994) (denying Rule 4(a)(5) motion in a criminal case where defense counsel filed notice of appeal late due to confusion between the 30 day deadline under Rule 4(a) for a civil case and the 10 day deadline for a criminal case under 4(b)); *see also Wei v. Hawaii,* 763 F.2d 370, 372 (9th Cir. 1985) ("If we

were to hold that Wei's attorney's inadvertent failure to calendar the Rule 4(j) deadline constitutes 'good cause,' the good cause exception would swallow the rule.").

Neither party has demonstrated good cause for failing to file a status report. To begin, both parties focus on the notion that this status report had to be joint, and then blame the other side for failing to be cooperative. *See* Gov't Response at 2-3; Resp't Response at 2. But, this tribunal's language very clearly directed that the obligation to file a status report "extends to both parties." Ord. Granting Resp't Second Mot. to Stay at 4. As the Government acknowledges, it made no effort to contact Respondent's counsel regarding a joint status report (Gov't Response at 2), nor did the Government file an independent status report or any other pleading that could alert this tribunal that a joint filing was impractical. The Government's assumption that "it would be usual and customary for the Respondent to coordinate and initially draft the filing of the status report," (*id*. at 2), does not relieve Government counsel of their responsibility to meet this tribunal's deadline.[8] *See* Ord. Granting Resp't Second Mot. to Stay at 4. Government counsel also proffers that "[w]hile to date the undersigned and opposing counsel have had little-to-no direct communication in this matter because settlement has not been a realistic or desired result and the litigation has been contentious, the undersigned accepts responsibility for not reaching out to opposing counsel." Gov't Response at 2. The Government's caveats do not excuse its obligation to this tribunal and, indeed, serve only to undermine the purported acceptance of responsibility. The Government had an obligation; it did not meet it, and it offers no good reason for its failure.

Respondent makes no effort to demonstrate good cause for its failure to file a joint status report. Respondent's communication with chamber's staff, by email, on August 2, 2024 at 5:22 p.m. ET indicates that Respondent understood he needed to file a status report and acknowledges that the email was not a filing, as Respondent's counsel stated that he would file the status report on the following Monday, August 5, 2024. *See* Ord. Directing Compliance at 1 n.1.[9] Despite his

[8] The Government has two counsel of record in this case, and either attorney could have met the Government's obligation.

[9] Even without that concession, an informal email, without a motion, but simply attaching two documents directly to chamber's staff, and not filed by ECF, is clearly not a motion filed compliant with this tribunal's rules. *See* Prehr'g Ruling at 8 ("[N]o substantive matter communicated through the body of a forwarding email will be considered."); *see also id.* ("The preferred method of filing correspondence in these proceedings is as a PDF attachment via email to the DEA Judicial Mailbox."). Moreover, since the email was sent after 5:00 p.m. ET on Friday, August 2, 2024, it

representation that he would file the status report on Monday, Respondent did not do so. Respondent's failure to file, consistent with his representation, required this tribunal to issue an Order Directing Compliance at 10:27 a.m. ET on August 6, 2024. It was not until the morning of August 7, 2024—five days after the deadline and twenty-four hours after this tribunal's Order—that Respondent reached out to Government counsel to coordinate a joint status report, and that was only in response to an Order by this tribunal. *See* Resp't Response at 1 (Respondent sent email with draft at 10:26 a.m.); Gov't Response at 2 (same). In other words, Respondent offers no explanation for why he did not file the joint status report on time, why he did not file the report on Monday, August 5, 2024, as he had represented to chambers' staff, or why he did not take any action prior to the morning of August 7, 2024.

The parties also quibble as to what happened between 10:26 a.m. and the 2:00 p.m. deadline on August 7, 2024, and who was responsible for the delay. *Compare* Gov't Response at 2-3, *with* Resp't Response at 2. Both parties ignore the fact that, by that point, the joint status report was already five days late. Moreover, this tribunal issued its Order Directing Compliance at 10:27 a.m., and that Order emphasized the failure to file the status report and, again, advised that failure to file a timely status report could result in vacatur of the stay. Order Directing Compliance at 1, n.2. Even so, Respondent waited twenty-four hours to send its draft to Government counsel. Resp't Response at 1; Gov't Response at 2. While this tribunal does not have that draft, it notes that a status update is not an onerous task and the status report eventually filed late on August 7, 2024 was little more than one page. Thus, regardless of what happened between 10:26 a.m. and 5:00 p.m. on August 7, 2024, there is no good cause for Respondent's failure to file the status report, especially given the circumstances discussed herein.

Respondent's primary argument, however, appears to be that this tribunal does not have any authority to take any action in this case because this case is stayed pending proceedings in district court, and those proceedings involve a challenge to this tribunal's authority. Resp't Response at 1. As Respondent phrases it, "[t]he very question pending is whether this Tribunal has the authority for this action—which has been stayed. Respondent's counsel remains concerned with the ultra vires actions of this Tribunal even while its authority is subject of a Federal District

---

would have been deemed filed on Monday, August 5, 2024, and thus was also untimely. *See* Ord. for Prehr'g Statements at 2-3; 21 C.F.R. § 1316.45.

Proceeding and the case is stayed." *Id*. More specifically, he claims that the Administrative Procedure Act (APA), in 5 U.S.C. § 556(c)(5), and the governing DEA regulations, in 21 C.F.R. § 1316.52, list the powers vested in a presiding officer (or Administrative Law Judge (ALJ)), and there is no authority to issue the Order to Show Cause or to hold a respondent "in contempt," and it "certainly does not list the power to preside over hearings that have been stayed." Resp't Response at 2. Respondent then seems to imply that, since the docket in the District Court proceedings is public, this tribunal could simply refer to the docket on its own.[10] *Id*.

Respondent's cursory legal arguments are patently without merit, illogical, internally contradictory, inconsistent with positions previously taken by Respondent, and bordering on bad faith. As a result, Respondent's legal arguments do not constitute good cause.

First, Respondent argues that the APA and DEA regulations "are devoid of any mention of authority that this tribunal retains to administer proceedings in the face of a pending Axon (sic) challenge to its authority." Resp't Response at 2. For obvious legal reasons, this argument is without merit. As a basic matter, even in a case challenging the authority of this tribunal, a litigant must either seek a stay from the ALJ or seek a TRO from a district court, and in both instances, the party seeking the stay has the burden of proof under traditional stay factors. *See Nken v. Holder*, 556 U.S. 418, 433 (2009) ("A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion . . .") (Internal quotation marks, citations, and alterations omitted); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 758-60 (10th Cir. 2024) (rejecting argument that *Axon* holds "being subjected to an unconstitutional agency's proceeding," without more, constitutes irreparable harm); *Grider Drug #1 & Grider Drug #2*, 77 Fed. Reg. 44070, 44104 n.97 (2012) (parallel proceedings are common; stays are rare). Undeniably, this administrative proceeding is stayed *because this tribunal issued*

[10] Respondent also argues that "[a]t the outset, the Tribunal does not provide any authority for its request or the purpose of the show cause. Respondent is left to guess as to whether this is an order to show cause as to why 'Respondent should not be held in contempt' or what action this Tribunal is considering." Resp't Response at 1 (internal quotations are Respondent's own). Respondent's counsel's own language makes it clear that he understands what this tribunal is requesting and the consequences of his failure to provide an answer for his failure to follow the tribunal's orders—sanctions in some form. This tribunal notes that Respondent's counsel is experienced in handling DEA administrative proceedings. Moreover, during these proceedings, he has been apprised, both in Orders from this tribunal and during the Prehearing Conference and the Status Conference, that this tribunal expects compliance with its orders, or it will impose consequences.

*a stay*. And because this tribunal has exercised its broad discretion to issue a stay, it is axiomatic that it has power to lift that stay. *See Grider Drug #1 & Grider Drug #2*, 77 Fed. Reg. at 44104 n.97 (lifting previously granted stay). Respondent does not address these well-established legal principles.

Second, Respondent argues that 5 U.S.C. § 556(c)(5), and the governing DEA regulations, in 21 C.F.R. § 1316.52, do not specifically vest an ALJ with power to preside over this stayed matter, issue an Order to Show Cause, or to hold a respondent "in contempt." Resp't Response at 2. This argument is flatly inconsistent with the plain language of both provisions, each of which specify that the list of powers is not exhaustive. *See* 5 U.S.C. § 556(c)(11) (ALJ may "take other action authorized by agency rule consistent with [the APA]"); 21 C.F.R. § 1316.52 (powers "not limited" to the enumerated list). Indeed, the fallacy of Respondent's argument is readily apparent—the list of powers, which Respondent contends is exhaustive—also lacks any express authority for this tribunal to issue a stay in the first instance. Yet, Respondent asked for, and received, a stay from this tribunal. Indeed, taking Respondent's new argument to its logical end, this tribunal never had the authority to grant a stay of the administrative proceedings that Respondent requested, and thus that stay would be void *ab initio*. 5 U.S.C. § 556(c)(5); 21 C.F.R. § 1316.52. Respondent does not acknowledge, let along explain, his inescapably inconsistent arguments, nor does he acknowledge the logical consequences of his most recent argument.

Third, Respondent ignores that the regulation upon which he relies *does* include the following language:

> The functions of the presiding officer *shall commence upon his designation and terminate upon the certification of the record to the Administrator*. The presiding officer shall have the duty to conduct a fair hearing, to take all necessary action to avoid delay, and to maintain order. He shall have all powers necessary to these ends, including (but not limited to) * * *.

21 C.F.R. § 1316.52 (emphasis added). The jurisdictional language clearly provides that the powers commence with the Request for Hearing and continue until the case is concluded and the record transferred to the Administrator. Since that has not happed yet, the regulations clearly vest this tribunal with jurisdiction over the case, even if there is a temporary stay. *See Grider Drug #1 and Grider Drug #2*, 77 Fed. Reg. at 44070, 44104 n.97 (ALJ granted stay for parallel state criminal proceeding, but lifted stay nine months later after further delays in state proceeding).

The regulation also provides that the ALJ is empowered "to take all necessary action to avoid delay, and to maintain order." *Id*. This is a broad grant of authority. Under that broad authority, this tribunal has the power to request a status update so that it can determine whether the stay *it has granted*—which is a protracted delay in the case—is still necessary.[11] This tribunal also has the authority to maintain order by requiring the parties to comply with this tribunal's orders and by requiring the parties to demonstrate why this tribunal should not impose a sanction for such a failure.

Finally, Respondent fails to acknowledge that this tribunal, like an Article III court, has the inherent authority to manage its docket. As the Supreme Court has held:

> There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is 'functionally comparable' to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, *regulate the course of the hearing*, and make or recommend decisions.

*See Butz v. Economou*, 438 U.S. 478, 513 (1978) (citing 5 U.S.C. § 556(c)) (emphasis added). This inherent authority of a court is "ancient" and "well-acknowledged." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629-632 (1962). This inherent power allows this tribunal to administer its docket to conserve scarce judicial resources. *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009). This inherent power allows this tribunal to stay a case for efficient administration of its docket. *Cost Bros., Inc. v. Travelers Indent. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888–89 (7th Cir. 2012); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO [Patent Trade Office] reexamination." (Internal citations omitted)). And, like the district court, this tribunal has

[11] As a practical note, as Respondent's experienced counsel surely knows, district courts routinely require a status update on cases when they have granted a stay, e.g., a stay of a civil complaint pending the outcome of parallel administrative proceedings. There is nothing unprecedented or ultra vires in this tribunal's request to have the parties apprise it of the status of pending parallel proceedings so that it may manage its docket efficiently and in the interest of justice. This tribunal's Order granting the stay also notes that updates allow it "[t]o ensure that this tribunal acts in consonance with the directives of the District Court." Ord. Granting Resp't Second Mot. to Stay at 4. Moreover, not all developments in a case, e.g. settlement negotiations, are reflected in a court docket. Therefore, even if this tribunal were to unilaterally refer to the docket in the District Court case, it would not necessarily provide a full view of the case status.

inherent powers to levy sanctions "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991).

Aside from these well-established legal principles that soundly refute Respondent's arguments, this tribunal finds that Respondent's own actions in this case undercut his position. Logically, Respondent's instant argument must be based on one of two underlying premises: (1) having issued its own stay in these proceedings, this tribunal is now prohibited from taking any action in the case because of its own stay; or (2) because the complaint in District Court challenges the authority of this tribunal, the mere filing of the complaint strips this tribunal of authority to proceed. The first argument is circular, illogical, and inconsistent with the broad authority granted this tribunal by the APA, relevant DEA regulations, and the well-established inherent authority of this tribunal to manage its docket. Notably, Respondent's actions, including the August 2, 2024 email to chambers' staff and the untimely August 7, 2024 status report, indicate very clearly that Respondent did not take this position until after this tribunal required him (and the Government) to explain their failure to file a timely status report. Rather, his actions clearly indicate that Respondent understood he had to file a status report and he did not object to filing such a report.

The second assumption fares no better. Aside from being inconsistent with the caselaw cited above, *supra* at 9, Respondent's past actions in this case establish that Respondent's counsel understands full well that he needed to take some action to obtain a stay—either request a stay in these proceedings or seek a TRO from the District Court. Respondent's counsel, in fact, twice sought a stay from this tribunal and filed a motion for a TRO with the District Court, requesting that the District Court stay these proceedings. Under a logical extrapolation of Respondent's current argument, none of those actions were necessary if, as he seems to argue now, the mere filing of his District Court complaint stripped this tribunal authority. Indeed, if Respondent's theory were correct, each motion he filed after lodging the civil complaint in District Court on March 22, 2024 (a first stay motion, two motions for continuances, an interlocutory appeal, a second stay motion) has no legal effect. In fact, Respondent's actions in this case following the March 22, 2024 civil complaint (and this tribunal's April 17, 2024, Order Denying Respondent's Motion to Stay) gave every indication to this tribunal that he intended on participating in an administrative hearing. *See, e.g.*, Resp't Mot. to Continue Administrative Hearing; Resp't Second Mot. to Continue Administrative Hearing. Again, Respondent's failure to even acknowledge, let

alone explain, his inconsistent positions and actions is fatal to his argument and, again, calls into question whether such arguments are made in good faith.

Thus, Respondent's argument is so fundamentally flawed that it borders on bad faith—his logic is self-contradictory, his analysis is based on a selective reading of 5 U.S.C. § 556(c)(5) and 21 C.F.R. § 1316.5, he fails to acknowledge the well-established inherent power of an ALJ in managing her docket, he fails to address or acknowledge contrary case law, and he fails to acknowledge, or explain, his prior pleadings and actions that are wholly inconsistent with his current position.

**B. Vacatur of the Stay of These Proceedings**

Respondent's argument is a clear proclamation that he does not believe this tribunal has any authority to take any action in this case while it is stayed or while there is a district court case challenging the authority of this tribunal, including actions to assist the tribunal's basic management of its duties under 21 C.F.R. § 1316.52. This tribunal agrees with the oft-cited proposition that "past performance is the best predictor of future performance." *Alra Labs., Inc. v. DEA*, 54 F.3d 450, 452 (7th Cir. 1995). Given Respondent's repeated failure to comply with this tribunal's orders, and his argument that he was not required to do so, this tribunal concludes that Respondent will continue to dispute this tribunal's authority and continue to ignore this tribunal's orders while a stay is in effect. Given Respondent's position, this tribunal has no option but to vacate the stay of these administrative proceedings that it previously issued on June 3, 2024. *See* Ord. Granting Resp't Second Mot. for Stay.[12] The stay in these proceedings is hereby **VACATED**, and this case is returned to this tribunal's active docket.

**C. Respondent's Repeated Failure to Follow the Orders of this Tribunal Requires Termination of These Proceedings**

Given Respondent's past performance, however, the matter cannot simply end with a vacatur of the stay. Respondent has clearly announced his position that this tribunal has no authority over him, no authority to enforce its orders, and no authority to enforce any consequences for Respondent's failure to follow this tribunal's orders. This is not a new position from

[12] To be clear, this tribunal is not vacating the stay based on the Government's veiled request that this tribunal impose such a sanction. *See* Gov't Response at 3. This tribunal emphasizes that the performance of Government counsel was sorely lacking in this case. Nonetheless, Respondent's declaration that he is not subject to this tribunal's authority while a stay is pending, leaves this tribunal no recourse other than vacating the stay.

Respondent; he has simply decided to memorialize it in his most recent pleading. As the extensive procedural history makes clear, Respondent has engaged in a protracted pattern of disregarding this tribunal's orders, making representations to this tribunal that he did not fulfill, filing required pleadings late, filing required pleadings only when forced to do so by this tribunal, delaying this case before ultimately refiling his request for a stay, engaging in combative and defiant behavior during the status conference, and generally expressing his obvious ire each time this tribunal instructs him to explain his failure to follow this tribunal's Orders. Respondent's persistent, escalating game of brinkmanship makes crystal clear that Respondent's counsel does not believe he is obligated to follow this tribunal's orders under any circumstances, and, in the recent motion, claims that he need not follow any orders from this tribunal while the case is stayed or while he has a pending collateral challenge to this tribunal's authority. Viewing this pattern as a whole, including the most recent disregard of this tribunal's orders and Respondent's legal arguments bordering on bad faith, this tribunal concludes, for the following reasons, that Respondent's pattern of behavior has abused the administrative process. Respondent's pattern of behavior and arguments also makes clear that nothing short of termination will stop the abuse of this administrative process.

It is beyond cavil that an ALJ has authority to control its proceedings and the parties appearing before it. *See supra* at 10-12. More than that, this tribunal has *the obligation* to maintain control over the parties to a proceeding. 21 C.F.R. § 1316.52 ("The presiding officer *shall have the duty* . . . to maintain order) (emphasis added); *see Stevens v. Osuna,* 877 F.3d 1293, 1305 (11th Cir. 2017) (Immigration Judge had "an obligation to maintain control over the courthouse and over the conduct of persons in the courthouse")*; United States v. Moriello,* 980 F.3d 924, 935 (4th Cir. 2020) (same). Such control includes imposing sanctions or consequences as a result of "an ongoing battle of nerves that threatened [the ALJ's] control of his courtroom." *Fitzugh v. DEA,* 813 F. 2d 1248, 1253 (D.C. Cir. 1987) (upholding DEA ALJ's decision regarding denial of continuance and proceeding to immediate hearing before appearance of Respondent); *see also Chambers*, 501 U.S. at 44-45. There can be no doubt that Respondent's counsel has repeatedly stated—orally and in writing, expressly and implicitly—that he is not subject to this tribunal's orders. As the Agency has emphasized, "[c]learly, the orderly procedures of justice are disrupted when one side of the proceeding decides to ignore an order of the Presiding Official. This Administration cannot permit the parties that appear before it to choose which orders to obey and

which orders to disregard." *Faunce Drug Store,* 47 Fed. Reg. 30122, 30123 (1982); *see also Edge Pharmacy,* 81 Fed. Reg. at 72100. A respondent can be deemed to have waived its right to a hearing by failing to follow such orders. *See Edge Pharmacy*, 81 Fed. Reg. at 72100 (termination based on failure to file a Prehearing Statement); *Al-Alousi, Inc.*, 70 Fed. Reg. 3561, 3561 (2005)) (same); *Kamir Garces-Mejias, M.D.*, 72 Fed. Reg. 54931, 54932-33 (2007) (same)).

This tribunal's obligation to maintain control is especially important here, because Respondent is a registrant who operates within a highly-regulated industry, subject to the Controlled Substances Act (CSA) and its attendant regulations. Significantly, the CSA has, as a core concern, the prevention of diversion and the protection of patients from drug-related abuse and deaths. *See Bradley H. Chesler, M.D.*, 87 Fed. Reg. 4917, 4940 n. *HH (2022) (citing *John O. Dimowo, M.D.*, 85 Fed. Reg. 15800, 15810 n.K, M (2020)); *Salman Akbar M.D.*, 86 Fed Reg. 52181, n.*O (2021)). The Agency "relies heavily on a registrant's honesty and integrity 'to complete its mission of preventing diversion within such a large regulated population.'" *Michael Jones, M.D*., 86 Fed. Reg. 20728, 20731 (2021) (quoting *Jeffrey Stein, M.D.*, 84 Fed. Reg. 46968, 46974 (2019)). Here, Respondent (acting through his attorney) has not been candid and has failed to act with integrity. He has misrepresented this tribunal's position in pleadings to this tribunal. *See supra* at 2. He has twice represented to this tribunal that he would file a pleading at a certain time, and twice failed to comply with his representation. *See supra* at 4-6. He has repeatedly forced this tribunal to expend unnecessary resources because he does not read, or follow, this tribunal's instructions. *See supra* at 3-5. Respondent has twice withheld information about the parallel District Court proceedings that were relevant to this tribunal's management of its docket. *See supra* at 3-4. Respondent's latest argument that this tribunal lacks authority over him while the case is stayed—and his accusation that this tribunal was acting ultra vires—ignores basic logic, the plain language of the regulations upon which he selectively relies, and his own past actions and arguments. Respondent's latest motion is not only a failure to follow clear directives from this tribunal, but it is declaration that this tribunal has no authority over Respondent.

This tribunal has repeatedly excused Respondent's failures to follow this tribunal's orders and directives, advising him on at least two occasions that repeated failures will result in a sanction. *See* Ord. Directing Compliance at 1 n.2; Ord. to Show Cause for Untimely Status Report at 1, 1 n.3. But, Respondent's counsel seems intent upon a game of brinkmanship, escalating his non-compliant behavior each time this tribunal attempts to manage its docket. The time has come to

end the warnings and impose a sanction commensurate with Respondent's pattern of abusing this process. Having considered Respondent's repeated failures to follow this tribunal's orders, his counsel's lack of candor and contumacious behavior, and Respondent's patently meritless arguments challenging this tribunal's authority to manage its docket, this tribunal concludes that there is no sanction other than termination that will cease Respondent's abuse of this administrative system. Given his past behavior and most recent arguments, this tribunal is not required to give Respondent endless opportunities to repeat his unprofessional and contumacious behavior before it imposes sanctions, especially because his current argument is that this tribunal lacks authority over him. *Cf. Alra Labs., Inc.* 54 F.3d at 452 ("[P]ast performance is the best predictor of future performance."). Moreover, based on the procedural history of this case, this tribunal concludes that Respondent, in fact, does *not* desire a hearing before this tribunal. Rather, he desires delay, during which he can continue to prescribe schedule II controlled substances despite very serious allegations against him. Accordingly, this tribunal construes Respondent's repeated failures to file timely motions, his lack of candor and integrity, and his patently meritless assertion that this tribunal has no authority to manage its docket or to enforce its orders as a withdrawal of his request for a hearing.

Accordingly, based on the foregoing, this case is **TERMINATED**. This tribunal's jurisdiction will be terminated upon the filing for a Request for Final Agency Action.[13] *See John P. Moore, III, M.D.*, 82 Fed. Reg. 10398, 10399 n.2 (2017).

Dated: August 20, 2024

TERESA WALLBAUM
Digitally signed by TERESA WALLBAUM
Date: 2024.08.20 14:14:41 -04'00'

TERESA A. WALLBAUM
Administrative Law Judge

---

[13] This Order does not affect or disrupt Respondent's complaint in District Court. Respondent may continue that challenge while this matter is pending before the Administrator as a Request for Final Agency Action. During that time, he will not be subjected to a hearing before this tribunal, which is the gravamen of his complaint in district court.

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on August 20, 2024, caused a copy of the foregoing to be delivered to the following recipients: (1) Michelle Venable-Ridley, Esq., Counsel for the Government, via email to Cornelia.M.Venable-Ridley@dea.gov and to the DEA Government Mailbox at dea.registration.litigation@dea.gov; (2) Edward O. Siclari, Esq., Counsel for the Government, via email to Edward.O.Siclari@dea.gov and to the DEA Government Mailbox at dea.registration.litigation@dea.gov; (3) Paul A. Dean, Esq., via email to Paul.A.Dean@dea.gov; and (4) Ronald W. Chapman II, Esq., Counsel for Respondent, via email to RWChapman@ChapmanLawGroup.com.

BRIONNA HOOD
Digitally signed by BRIONNA HOOD
Date: 2024.08.20 14:27:58 -04'00'

Brionna Hood
Secretary (CTR)
Office of Administrative Law Judges