**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**MUHAMAD ALY RIFAI, M.D.,**

Plaintiff,

v.

**THE UNITED STATES DEPARTMENT OF JUSTICE et al.,**

Defendants.

**Case No. 5:24-cv-01242-JLS**

## PLAINTIFF'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS COMPLAINT

Plaintiff, Muhamad Aly Rifai, M.D. ("Dr Rifai"), by and through undersigned counsel, hereby files Plaintiff's Response to the United States' motion to Dismiss Complaint. For the reasons that follow, Plaintiff submits that neither his Complaint (ECF No. 1) nor Amended Complaint (ECF No. 17) should be dismissed. The Court should instead deny the United States' motion.

## BACKGROUND

On August 29, 2024, the Government filed its Motion to Dismiss Complaint, asking that the Court dismiss, with prejudice, Plaintiff's pending Complaint. (ECF No.16). That motion argues that dismissal is appropriate because there is no DEA final agency action for the Court to review. (*Id*. at 4). According to the Government, this means that Dr. Rifai lacks standing and that this Court lacks subject matter jurisdiction. (*Id)*.

On September 26, 2024, the Court held a hearing on Plaintiff's Motion for a Preliminary Injunction to Enjoin the DEA. (ECF No.20). At that hearing the Government reasserted its challenge on Dr. Rifai's standing, arguing that the pending cause should be dismissed because

there is no final agency action for the Court to review. The Government also took issue with Dr. Rifai's pleadings, calling them "schizophrenic." For example, the Government claimed that Dr. Rifai's Amended Complaint, (ECF No.17), was deficient because it failed to address the arguments in the pending Motion to Dismiss Complaint.

A party's Amended Complaint is a leading document that sets the parameters on the cause of action.[1] It is not a responsive pleading. At the time of the Court's hearing on September 26, 2024, Dr. Rifai had not yet filed his response to the Government's Motion to Dismiss Complaint. He does so now.

## LEGAL STANDARDS

**Federal Rule of Civil Procedure 12(b)(1)** authorizes a district court to dismiss a case where there is a lack of subject matter-jurisdiction, which requires the existence of "cases or controversies" under Article III of the U.S. Constitution. *See*, *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990). The "cases or controversies" requirement includes the following: injury in fact, causation, and redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

For a plaintiff to establish an "injury-in-fact" he must set forth an injury that is concrete in both a qualitative and temporal sense. *Whitmore*, 495 U.S. at 155. Plaintiff's complainant must allege an injury to himself that is "distinct and palpable," as opposed to merely "[a]bstract," and the alleged harm must be actual or imminent, not "conjectural" or "hypothetical." *Id*. To satisfy "causation," the plaintiff must establish that his injury can "fairly be traced to the challenged action." *Id*. Finally, "redressability" its satisfied where the plaintiff can establish that his injury is likely to be redressed by a favorable decision. *Id*. Speculation on the scope of redressability will not do. *See Id*.

---

[1] *See*, *Montanye v. Wissahickon Sch. Dist.*, 218 Fed. Appx. 126, 128 (3d Cir. 2007) (noting that Plaintiff's Amended Complaint set forth several causes of action).

Even if a plaintiff satisfies these three requirements, however, dismissal is appropriate if there is a lack of subject matter jurisdiction. *See*, *Steel Co*., 523 U.S. at 88–89.

**Federal Rule of Civil Procedure 12(b)(6)** authorizes a district court to dismiss a case where the plaintiff fails to state a claim for which relief can be granted. A complaint must contain sufficient factual allegations that, if accepted as true, state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the absence of that, the complaint must be dismissed under Rule 12(b)(6). *See Id*.

Facial plausibility is satisfied when a complaint's factual content allows the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

### I. DR. RIFAI'S CONSTITUTIONAL CLAIMS DO NOT REQUIRE FINAL AGENCY ACTION BEFORE THE COURT CAN REVIEW THEM.

The Government contends that any claims brought under the Administrative Procedure Act ("APA") must be dismissed because there is no final agency action ripe for review by the Court. (ECF No.16, at 14).

Section 706(2) authorizes a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2). The APA "provide[s] a limited cause of action for parties adversely affected by agency action," *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012) (internal quotation omitted). That agency actions must be a "final agency action

for which there is no other adequate remedy in a court" and without which a plaintiff "cannot state a claim under the APA[.]" 5 U.S.C. § 704; *Chehazeh*, 666 F.3d at 125 n.11.

The Supreme Court has recognized that "[a] special statutory review scheme [] may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter. v. FTC*, 598 U.S. 175, 185 (2023) ("We have several times held that the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases."). Here, that statutory scheme is the APA, 5 U.S.C. § 704, and the codified causes of action in 5 U.S.C. § 706.

"But a statutory review scheme of that kind does not necessarily extend to every claim concerning agency action." *Axon,* 598 U.S. at 185. The Supreme Court has instead identified three considerations—commonly known as the *Thunder Basin* factors—to determine whether claims concerning agency action are "of the type Congress intended to be reviewed within th[e] statutory structure." *Id*. at 176. (citation omitted). First, could precluding district court jurisdiction "foreclose all meaningful judicial review" of the claim? *Id*. Second, is the claim "wholly collateral" to the statute's review provisions? *Id*. Third, is the claim "outside the agency's expertise?" *Id*. Regarding that third consideration, it is worth noting that following *Axon* the Supreme Court gutted the notion of "agency expertise" in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). There, the Supreme Court held "*Chevron* is overruled." *Id*. at 2247.

Reflecting on *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), the Court in *Axon* found that the challenge in *Free Enterprise Fund*, that officials with two layers of tenure protection were unconstitutionally insulated from presidential control, was sufficiently disconnected from the Exchange Act, the SEC's special statutory review scheme, as to "foreclose all meaningful judicial review." *Axon*, 598 U.S. at 188. The Court also found that the constitutional

challenge was "collateral" to the subject of the agency proceedings. *Id*. And the Court further found that the constitutional claim was "not at all" related to "considerations of agency policy." *Id*. (internal quotation marks, citations and alterations omitted).

Relying on its *Free Enterprise Fund* analysis, the Supreme Court held in *Axon* that:

> The claims here are of the same ilk as the one in Free Enterprise Fund. There, the complaint alleged that the Board's "freedom from Presidential oversight" rendered unconstitutional "all power and authority [the Board] exercised." Only the Court's ability to sever the relevant statute's for-cause removal provision enabled the Board to keep running. The Article II challenges in *Axon's* and *Cochran's* cases would likewise prevent ALJs—through whom the Commissions do much of their work—from exercising any power, unless they lose their double-for-cause tenure protection. And Axon's combination-of-functions claim similarly goes to the core of the FTC's existence, given that the agency indeed houses (and by design) both prosecutorial and adjudicative activities. The challenges here, as in *Free Enterprise Fund*, are not to any specific substantive decision—say, to fining a company (*Thunder Basin*) or firing an employee (*Elgin*). Nor are they to the commonplace procedures agencies use to make such a decision. They are instead challenges, again as in *Free Enterprise Fund*, to the structure or very existence of an agency: They charge that an agency is wielding authority unconstitutionally in all or a broad swath of its work.

598 U.S. at 189.

Like in *Axon*, Dr. Rifai has set forth challenges of a constitutional dimension. More specifically, Dr. Rifai has alleged that the DEA has violated his Fourth Amendment Right Against Unreasonable Searches and Seizures (Count 1); that his Fifth Amendment Right to Due Process was violated (Count 2); and that the DEA's Administrative Law System is Unconstitutional (Count 3). (ECF No.17, at 14-20). Dr. Rifai also alleged in his initial complaint that the appointment and removal of the DEA's Administrative Law Judges ("ALJ") is unconstitutional. (ECF No.1, at 14). Dr. Rifai has brought these causes of action under 5 U.S.C. § 702 and 28 U.S.C. §§ 1331, 1346. (ECF No.1, at 3); (ECF No.17, at 3). The Supreme Court in *Axon* recognized that so long as the three considerations that it identified are satisfied, then jurisdiction under 28 U. S. C. §1331 is appropriate even where there may be a special statutory review scheme. 598 U.S. at 185-89. For

the reasons that follow, Dr. Rifai's constitutional challenges do not require final agency action for the Court's review.

**i. Should the Court Wait for Final Agency Action that Will Deprive Dr. Rifai of "Meaningful Judicial Review."**

Like in *Free Enterprise Fund* and *Axon*, Dr. Rifai is challenging the DEA's very existence as presently constructed. *See*, 598 U.S. at 189 ("Axon's combination-of-functions claim similarly goes to the core of the FTC's existence"). More specifically, Dr. Rifai challenges the DEA's unconstitutional broadening of its authority under the Controlled Substance's Act whereby it has used self-promulgated "general practice standards" to revoke registrant's DEA registration. (ECF No.17, at 19-20). Dr. Rifai also challenges the unconstitutional DEA proceedings, which include the deprivation of due process by denying registrants any type of hearing and the flippant use of administrative subpoenas to obtain evidence for parallel criminal proceedings in violation of the Fourth Amendment. (*See Id*. at 14-18). Dr. Rifai has further challenged the appointment and removal of DEA ALJs. (ECF No.1, at 14-15). These challenges satisfy the first consideration, like in *Axon*. *See Id*. at 185.

To be sure, the Supreme Court found in *Axon* that even if on appeal an appeals court agrees with *Axon* that it has been subjected to an "unconstitutional agency authority" based on a "proceeding by an unaccountable ALJ," while that court could vacate the agency order, Axon's constitutional claim is not about the order. *Id*. at 191. That claim is instead premised on the separation-of-powers, and "Axon would have the same claim had it won before the agency." *Id*. (finding "[t]he claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker"). This led the Supreme Court to conclude that if *Axon* had to wait until a final agency order to appeal, that delay would mean that the court of appeals can do nothing. *Id*. In the Court's words: "And as to that grievance, the court of appeals can do nothing: A proceeding that

has already happened cannot be undone. Judicial review of *Axon's* (and *Cochran's*) structural constitutional claims would come too late to be meaningful." *Id*.

Like in *Axon*, Dr. Rifai's constitutional challenges exist independent of the outcome of the DEA proceedings. He "would have the same claim had [he] won before the agency." *See Id*. Dr. Rifai is instead challenging the DEA's existence as presently constituted and the unconstitutional levers that it pulls in depriving registrants of their Fourth Amendment and Fifth Amendment rights while expanding the scope of its authority exceeding its authority under the CSA. If Dr. Rifai is forced to wait until a DEA final agency order, then his "claims would come too late to be meaningful." *Id*.

The Government, in its Motion to Dismiss Complaint, argues that dismissal is appropriate because Dr. Rifai has not been adversely affected. (ECF No.16, at 17). According to the Government, Dr. Rifai does not have a cognizable injury unless and until a final order is issued by the DEA Administrator. *Id*. The Government's argument ignores the deprivation of Dr. Rifai's constitutional rights. Specifically, Dr. Rifai's Fourth Amendment right to privacy and his Fifth Amendment right to due process have *already* been violated. Moreover, Dr. Rifai has been adversely affected by the DEA's unconstitutional enforcement of the CSA, broadening the scope of its authority to wield self-promulgated medical standards in revoking DEA registrations. These constitutional challenges flow from "here-and-now injury" that Dr. Rifai has suffered. *See*, *Axon*, 598 U.S. at 191 (citation omitted).

Dr. Rifai will thus be denied "meaningful judicial review" and adversely affected should the Court dismiss his Complaint pending the dispensation of the DEA administrative proceedings.

**ii. Dr. Rifai's Constitutional Challenges are "Wholly Collateral" to the Special Statutory Scheme**

Dr. Rifai's constitutional claims are also "wholly collateral" to the statute's review provisions.

The Supreme Court in *Axon* found that the combination-of-functions claim were not directed toward any specific substantive decision but instead challenged that the administrative agency itself was operating outside the parameters of the Constitution. *See Id*. at 189. The same goes here. Dr. Rifai's claims challenge the DEA's enforcement of the CSA itself and its not directed toward any specific substantive decision. Whatever that DEA decision may eventually find, the decision itself is a second order issue because the decision will be rendered by way of an unconstitutional administrative process. The special statutory scheme here is not equipped to handle Dr. Rifai's constitutional claims and is instead designed to allow review of specific agency orders. *See*, 5 U.S.C. §§ 704, 706. His claims thus should proceed forward.

**iii. Dr. Rifai's Constitutional Claims Fall Outside of the DEA's Subject Matter Expertise**

Dr. Rifai's constitutional claims also fall outside the gambit of "agency expertise," to the extent that such "expertise" exists following *Loper Bright Enters.*, 144 S. Ct. at 2247. The DEA, to be sure, is tasked with ensuring the safety and health of American communities by combating criminal drug networks bringing harm, violence, overdoses, and poisonings to the United States. [2] Constitutional inquiries clearly fall outside of that narrow purview. *See*, *Axon*, 598 U.S. at 194-95 (finding that agencies are designed to regulate specific subject matter but possess no expertise on constitutional jurisprudence).

Accordingly, Dr. Rifai respectfully submits that he has standing to invoke this Court's review and that the Court has competent jurisdiction to decide the same.

[2] *See*, https://www.dea.gov/.

## II. THE COURT HAS THE ABILITY TO REDRESS THE HARM THAT DR. RIFAI HAS SUFFERED

The Government claims that the Court should dismiss Count 1 alleging the violation of the Fourth Amendment because the Court lacks subject-matter jurisdiction. (ECF No.16, at 18). The Government contends that because Dr. Rifai's Fourth Amendment claim is grounded in his criminal prosecution where the Government improperly used an administrative subpoena to obtain medical records, an injunction against the DEA's administrative proceedings will not remedy any alleged harm. *Id*. The Court thus "should dismiss under Rule 12(b)(1) on the ground that the Court cannot provide redress and therefore Rifai lacks standing." *Id*.

The Government is mistaken. An administrative agency cannot enforce its regime in violation of the Constitution. That represents "a here-and-now injury." *Axon*, 598 U.S. at 191 (citation omitted). Dr. Rifai is moving that the Court abolish the DEA's unconstitutional practice of violating the Fourth Amendment and leveraging administrative subpoenas to obtain evidence to be used in a criminal prosecution. *See*, *United States v. Hossbach*, 518 F. Supp. 759, 766-67 (E.D. Pa. 1980). Dr. Rifai is also moving for the Court to exclude from the DEA administrative process any evidence that was obtained from the illegitimate subpoena. *See*, *Herring v. United States*, 555 U.S. 135, 141 (2009) (finding that the exclusionary rule is appropriate where it results in appreciable deterrence).

Here, by applying the exclusionary rule and excluding the Government's "ill-gotten gains," the Court can ensure that other registrant's do not fall prey to the DEA's unconstitutional use of administrative subpoenas. Use of the rule is particularly important in this context too because it will dissuade the DEA from pursuing frivolous revocation proceedings against registrants in order to obtain evidence for criminal prosecution. Because patients rely on registrants to obtain the medications that they require for their medical care, deterrence is a must in this context. *See*,

*Boynes v. Limetree Bay Ventures LLC*, No. 23-2432, 2024 U.S. App. LEXIS 19467, at *9 (3d Cir. Aug. 5, 2024) (finding the district court correctly found that the balance of the equities and the public interest both favor the plaintiffs where there was a strong health interest in access to safe drinking water).

To the extent that the Government claims that the DEA does not intend to use the ill-obtained evidence, that proves Dr. Rifai's point: That the DEA never intended to use the evidence during the administrative process but instead improperly used an administrative subpoena to obtain evidence for the Government's criminal prosecution of Dr. Rifai. *See*, (ECF No.17, at 14-16).

The Court thus has subject-matter jurisdiction, and it should deny the Government's request to dismiss under Rule 12(b)(1).

## III. THE REMOVAL OF DEA ALJS IS UNCONSTITUTIONAL

The Government asks that the Court not follow the "Fifth Circuit's outlier decision in *Jarkesy*." (ECF No.16, at 24). The Government instead urges the Court to dismiss Dr. Rifai's complaint and find that the removal of DEA ALJs is constitutionally sound. *See Id*.

Section 3105 of Title 5 of the United States Code outlines the procedure for appointing ALJs across all federal agencies, including those within the DEA. This legislation stipulates that each federal executive agency is obligated to appoint a sufficient number of ALJs to facilitate its administrative proceedings. 5 U.S.C. § 3105.

In *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the Supreme Court emphasized that SEC ALJs are inferior officers. *Id*. at 464. That means that there are restrictions on who and how ALJs are appointed and removed from their position. In *Free Enterprise Fund*, for example, the Supreme Court affirmed that inferior officers cannot be afforded two-layers of good-cause removal

protection because that would violate the President's removal power that is commanded under Article II of the U.S. Constitution. *See*, 561 U.S. at 496.

In relying on *Lucia* and *Free Enterprise Fund*, the Fifth Circuit in *Jarkesy* found that because SEC ALJs possessed more than one-layer of "for cause" removal protection, the removal structure violated Article II and stripped the President of the removal power recognized by the U.S. Constitution. *SEC v. Jarkesy*, 34 F.4th 446 (5th Cir. 2022), aff'd, 144 S. Ct. 2117 (2024). More specifically, the Fifth Circuit found that because "SEC ALJs are inferior officers; they can only be removed by the SEC Commissioners if good cause is found by the Merits Systems Protection Board; SEC Commissioners and MSPB members can only be removed by the President for cause; so, SEC ALJs are insulated from the President by at least two layers of for-cause protection from removal, which is unconstitutional under *Free Enterprise Fund*." *Id*. at 464.

The same removal issue exists in the DEA. According to the APA, ALJs, including those within the DEA can only be removed for good cause as determined by the Merit Systems Protection Board (MSPB). *See*, 5 U.S.C. § 7521(a). This statutory constraint means that neither the President nor the Attorney General can independently ascertain "good cause" and subsequently remove DEA ALJs without MSPB approval. Members of the MSPB themselves, however, cannot be removed except for good cause. *See*, 5 U.S.C. § 1202(d). This dual requirement for cause-based removal infringes upon Article II, as interpreted by the Supreme Court in *Free Enterprise*. *See*, *Jarkesy*, 34 F.4th at 464. This means that the removal protections that ALJ Wallbaum enjoys are unconstitutional.

The Government responds, claiming that a plaintiff challenging a removal restriction is entitled to relief only when the challenged restriction "inflict[ed] compensable harm" on the

plaintiff. *Collins v. Yellen*, 594 U.S. 220, 259 (2021). Here, Dr. Rifai has suffered harm from the DEA's unconstitutional removal protection of ALJ Wallbaum.

The Third Circuit explained, following *Collins*, that "a mere allegation that the unconstitutional provision inherently caused them harm is insufficient." *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Trust*, 96 F.4th 599, 615 (3d Cir. 2024). Rather, there must be some type of link between the removal provision at issue and the claimant's case for there to be cognizable harm. *See Id*. In *Consumer Fin. Prot.*, the Third Circuit found that link to be missing, noting that:

> We cannot find such a link. The statute, in relevant part, states: "The Director shall serve for a term of 5 years"; "An individual may serve as Director after the expiration of the term for which appointed, until a successor has been appointed and qualified"; and "The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office." There is no notion in this statute that the CFPB would have taken this action but for the President's inability to remove the Director. On the contrary, as the District Court noted, there 'is strong evidence that this suit would have been brought regardless' of a president's authority to remove because the CFPB's litigation strategy has been consistent across five directors, four of whom were removable at will.

*Id*.

Conversely, here, ALJ Wallbaum's strategy in overseeing Dr. Rifai's DEA administrative proceedings is not consistent with the due process afforded to other registrants. In fact, in ALJ Waldbaum's order, she fails to cite to any authority for the proposition that she can entirely dispense of a registrant's hearing. (*Ord*., ECF No. 17-1). There is a link present here between the unconstitutional removal protections afforded to ALJ Wallbaum and the harm that Dr. Rifai has suffered.

In reverse, Dr. Rifai has suffered concrete, identifiable harm given that ALJ Wallbaum has completely terminated his administrative proceedings, denying him a hearing before the DEA Administrator issues its final order on revocation. That harm is directly tied to the removal

protection that ALJ Wallbaum enjoys. More specifically, ALJ Wallbaum issued this highly atypical order, wherein Dr. Rifai is afforded zero due process, with the understanding that she is insulated from removal.

Due process is thought to be an absolute right ". . . because of its importance to organized society . . . ." *Higgins v. Beyer*, 293 F.3d 683, 694, n.3 (3d Circ. 2002) (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Moreover, due process is a guaranteed constitutional right under the Fifth Amendment, which states "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V; *see*, *Richardson*, 402 U.S. at 401 (holding procedural due process applies to administrative hearings). The cornerstone of procedural due process is the right to an impartial tribunal. *See*, *Withrow v. Larkin*, 421 U.S. 35, 50 n.16 (1975). Given the importance of due process, there is every reason to believe that, butfor the unconstitutional removal protections afforded to ALJ Wallbaum: (1) she would be removed for denying registrants their fundamental right to due process; and (2) she would not have denied Dr. Rifai his due process rights knowing that removal would follow.

Accordingly, this Court should deny the Government's Motion to Dismiss Complaint given that ALJ Wallbaum has been afforded unconsitituional removal protections and because Dr. Rifai has suffered compensable harm.

## IV. DR. RIFAI IS ENTITLED TO A PRELIMINARY INJUNCTION OR DECLARATORY RELIEF

The Government claims that the Court should dismiss Dr. Rifai's claims for a preliminary injunction and declaratory relief. (ECF No.16, at 25). According to the Government, "it is overwhelmingly clear that a preliminary injunction is not appropriate." *Id*.

Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). Of the four factors, the first two are the most critical. *Del. State Sportsmen's Ass'n, Inc.*, 108 F.4th at 202. The movant bears the burden of making a clear showing for injunctive relief. *Id*.

Dr. Rifai has substantiated why he should be entitled to a preliminary injunction in his motion filed following the Government's Motion to Dismiss Complaint. *See*, (ECF No.18). In that filing Dr. Rifai established that he is likely to succeed on the merits as in *North American Coal Co. v. Miller*, 870 F.2d 948 (3d Cir. 1989) where the Third Circuit reversed and remanded finding that the appellant was deprived of due process. *Id*. In *North American Coal Co.*, the appellant was simply denied the opportunity to respond to a piece of medical evidence. *Id*. Here, Dr. Rifai was completely deprived of due process when ALJ Wallbaum terminated his hearing on revocation. This does not follow the prevailing wisdom that a court enforces the least severe sanction to achieve an outcome. *See*, *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (endorsing that the basic principle governing the choice of sanctions is that the least severe sanctions adequate to serve the purpose should be imposed). Moreover, ALJ Wallbaum failed to cite to any authority to substantiate that she is even allowed to terminate a registrant's administrative hearing in its entirety. *Cf. Roadway Express, Inc. v. United States DOL*, 495 F.3d 477, 484 (7th Cir. 2007) (where the agency's rules, 29 C.F.R. § 18.6(d)(2)(iii), unambiguously

permitted the ALJ to impose an order excluding evidence that a non-complying party wishes to introduce in support of its claim as a discovery sanction). Dr. Rifai also argued that he is likely to succeed on the merits because the DEA has unconstitutionally broadened its authority under the CSA by leveraging self-promulgated "general practice standards" to revoke DEA registrations. *See*, (ECF No.18, at 10-11); *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006).[3] Not to mention that Dr. Rifai is likely to prevail on the removal issue for the reasons discussed immediately above in this response.

Dr. Rifai is also likely to suffer irreparable harm in the absence of preliminary relief. Indeed, Dr. Rifai has substantiated that he will be forced to shutter his medical practice indefinitely, without the possibility of reopening, should a preliminary injunction not be issued. (ECF No.18, at 11-12). He provided an affidavit attesting to that. (*Affidavit*, ECF No. 17-4).

The balance of equities also tips in favor of a preliminary injunction. As explained in Dr. Rifai's motion, there is a serious and compelling interest in protecting registrants from the unconstitutional enforcement of the CSA and the DEA's unconstitutional administrative structure. *See*, (ECF No.18, at 12-14). That includes the unconstitutional removal of DEA ALJs discussed in this response. Indeed, access to controlled substances, particularly opioids, for genuine medical care is at an all time low, with many patients suffering in turn.[4]

Finally, the public interest rests in granting an injunction so that patients do not continue to lose access to the opioids they need for their medical care. *See*, (ECF No.18, at 14-15); *Boynes*, LEXIS 19467, at *9 (finding the district court correctly found that the balance of the equities and

---

[3] John J. Mulrooney II and Katherine E. Legel, Current Navigation Points in Drug Diversion Law: Hidden Rocks in Shallow, Murky, Drug-Infested Waters, 101 Marq. L. Rev. 333, 385-86 (2017), https://scholarship.law.marquette.edu/mulr/vol101/ iss2/3.

[4] Sam Whitehead and Andy Miller, Chronic Pain Patients Struggle to get Opioid Prescriptions Filled, Even as CDC Eases Guidelines, CNN Health, Mar. 17, 2023, https://www.cnn. com/2023/03/17/health/opioid-chronic-pain-cdc-guidelines-khnpartner/index.html.

the public interest both favor the plaintiffs where there was a strong health interest in access to safe drinking water). The public interest lies with not subjecting medical providers to an unconstitutional administrative regime, especially when there are other boards and bodies at the state level that can appropriately monitor patient safety. For example, the State Board of Medicine of the Commonwealth of Pennsylvania regulates the practice of medicine through the licensure, registration and certification of members of the medical profession in the Commonwealth of Pennsylvania. The Board regulates medical doctors; physician assistants; radiology technicians; respiratory therapists; nurse-midwives; acupuncturists; practitioners of oriental medicine; perfusionists; behavioral specialists; and athletic trainers. The Board also has authority take disciplinary or corrective action against individuals it regulates.[5]

For these reasons and the reasons discussed throughout, a preliminary injunction or declaratory relief is appropriate.

**CONCLUSION**

For the foregoing reasons, Dr. Rifai respectfully asks that the Court deny the Government's Motion to Dismiss Complaint.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: October 3, 2024

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
1441 West Long Lake Road, Suite 310
Troy, Michigan 48098
T: (248) 644-6326
F: (248) 644-6324
RWChapman@ChapmanLawGroup.com

*Counsel for Plaintiff Muhamad Aly Rifai, M.D.*

[5] *See* https://www.pa.gov/en/agencies/dos/department-and-offices/bpoa/boards-commissions/medicine.html

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2024, I electronically filed the forgoing document with the clerk of court by using the CM/ECF system which will send the notice of electronic filing to all attorneys of record.

/s/ *Ronald W. Chapman, II*
Ronald W. Chapman II, Esq., LL.M.