IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MUHAMAD ALY RIFAI** | : CIVIL ACTION |
| | : |
| | : |
| v. | : NO. 24-cv-01242-JLS |
| | : |
| **THE UNITED STATES DEPARTMENT** | : |
| **OF JUSTICE, et al.** | : |

**MEMORANDUM**

**SCHMEHL, J.** - */s/ JLS*                                                                      **SEPTEMBER 10, 2025**

     Dr. Muhamad Aly Rifai ("Rifai") collaterally petitions the Court for injunctive and declaratory relief under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, and 28 U.S.C. §1331, raising several constitutional challenges to the Drug Enforcement Administration's ("DEA") current system of adjudication for determining whether Rifai's certificate of registration to dispense controlled substances should be revoked. Named as Defendants are the U.S. Department of Justice, Attorney General Pamela Bondi, Acting Administrator of the U.S. Drug Enforcement Administration (DEA) Robert Murphy, the DEA, and the United States of America. Presently before the court is the Defendants' motion to dismiss Rifai's second amended complaint ("SAC") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. For the reasons that follow, the motion is granted.

     **STANDARD OF REVIEW**

     The Defendants make a "facial" attack on the Court's jurisdiction. A "facial" attack considers a claim on its face and asserts it is insufficient to invoke the

1

Court's subject matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

The Court considers only the allegations of the complaint and documents referenced in the complaint in the light most favorable to Dr. Rifai. Nagle. *Id*. The burden of establishing subject matter jurisdiction rests on Dr. Rifai as the party asserting jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

Dr. Rifai is a board-certified psychiatrist who practices in the Commonwealth of Pennsylvania. SAC at ¶13. He has practiced medicine psychiatry for over twenty (20) years. *Id*. Dr Rifai also operates several clinics under the name Blue Mountain Psychiatry, LLC. *Id*. at ¶14.

## **PROCEDURAL HISTORY**

On November 8, 2022, Rifai was indicted by a federal grand jury on four counts of healthcare fraud. *United States of America v. Muhamad Aly Rifai*, Criminal Action No. 22-390 (E.D. Pa. 2022) ECF No. 1. 2. On March 30, 2023, a DEA drug diversion investigator informed Rifai's counsel in the criminal action that DEA intended to initiate an administrative enforcement action against him concerning the revocation of Rifai's DEA registration. On April 10, 2023, Rifai's counsel informed the DEA that Rifai declined to surrender his registration to dispense controlled substances and acknowledged his understanding that the DEA would pursue an administration enforcement hearing.

On October 2, 2023, the DEA served upon Rifai a DEA administrative subpoena (number CK-23-383930) seeking the medical file of a purported former patient of Dr.

Rifai, who was in reality an undercover investigator. On October 10, 2023, Dr. Rifai, through his counsel, responded to the subpoena and provided the requested file for his former patient. On October 16, 2023, Rifai's counsel in the administrative matter, who also represents him in this action, produced medical records to the DEA pursuant to the administrative subpoena.

On November 30, 2023, the DEA issued an Order to Show Cause against Rifai's DEA registration. On December 28, 2023, Rifai filed an answer to the Order to Show Cause and requested that DEA hold an administrative hearing before a DEA Administrative Law Judge ("ALJ"). On December 29, 2023, the ALJ issued an Order for prehearing statements before conducting a prehearing conference on January 31, 2024. A pre-hearing ruling was issued on January 31, 2024.

On February 20, 2024, Rifai filed in the administrative proceeding a prehearing statement and requested that the hearing be postponed until after Rifai's federal criminal trial, which at the time was scheduled to begin April 29, 2024. On March 22, 2024, Rifai commenced this action by filing his Complaint (ECF No. 1). The DEA ALJ granted Rifai's request and continued the hearing until May 2, 2024. The ALJ later further continued the hearing until May 23, 2024. On April 29, 2024, Rifai's criminal trial began before this Court. On May 9, 2024, a jury acquitted Rifai on all four counts. On May 16, 2024, Rifai filed an emergency motion for a temporary restraining order (ECF No. 7) in this matter, seeking to enjoin DEA from proceeding with its administrative enforcement process until after both: (a) the conclusion of Rifai's criminal trial (despite the fact that the criminal case already had concluded); and (b) the Supreme Court issued its anticipated decision in a case concerning the constitutionality of the Securities

3

and Exchange Commission's ("SEC") appointment of ALJs. On June 3, 2024, upon Rifai's request, the DEA ALJ stayed all administrative proceedings against Rifai "until the District Court renders its decision" in this case. The following day, June 4, 2024, the Court denied as moot Rifai's emergency motion for a temporary restraining order (ECF No. 10).

On August 20, 2024, the DEA ALJ lifted the stay and ruled that the administrative hearing process would be terminated upon DEA's request for final agency action. Specifically, the ALJ stated:

> As the extensive procedural history makes clear, Respondent has engaged in a protracted pattern of disregarding this tribunal's orders, making representations to this tribunal that he did not fulfill, filing required pleadings late, filing required pleadings only when forced to do so by this tribunal, delaying this case before ultimately refiling his request for a stay, engaging in combative and defiant behavior during the status conference, and generally expressing his obvious ire each time this tribunal instructs him to explain his failure to follow this tribunal's Orders. Respondent's persistent, escalating game of brinkmanship makes crystal clear that Respondent's counsel does not believe he is obligated to follow this tribunal's orders under any circumstances, and, in the recent motion, claims that he need not follow any orders from this tribunal while the case is stayed or while he has a pending collateral challenge to this tribunal's authority. Viewing this pattern as a whole, including the most recent disregard of this tribunal's orders and Respondent's legal arguments bordering on bad faith, this tribunal concludes, for the following reasons, that Respondent's pattern of behavior has abused the administrative process. Respondent's pattern of behavior and arguments also makes clear that nothing short of termination will stop the abuse of this administrative process.

ECF 16-1 at p. 15. The ALJ further found that Rifai "does not desire a hearing before [that] tribunal," but rather "desires delay, during which he can continue to prescribe schedule II controlled substances despite very serious allegations against him." *Id*. at p. 17.

On September 5, 2024, the government filed a request with the DEA for it to find Rifai in default. ECF 35-1 at p. 2. In an Order dated July 5, 2025, the DEA denied the government's request and further advised the government that if it "wishes to pursue this matter, it may file a new request for final agency action that contains substantial record evidence supporting the denial of Respondent's registration on the grounds noted in the OSC." *Id.* at pp. 9-10.

### **PETITIONER'S CLAIMS**

Rifai filed the SAC (ECF No. 29) on April 25, 2025, asserting the following claims:

> 1. Fourth Amendment Violation (Count I): Defendants violated Dr. Rifai's right to be free from unreasonable searches and seizures by issuing and executing an administrative subpoena without a warrant or judicial oversight, circumventing the Fourth Amendment for the purpose of aiding an ongoing federal criminal investigation and eventual prosecution. Without the documents obtained thereof, the administrative proceeding would never have been initiated. (ECF No. 29 at 14-16.)
>
> 2. Fifth Amendment Due Process Violation (Count II): Defendants violated Dr. Rifai's procedural due process rights by unlawfully terminating his administrative proceedings through ultra vires action by a DEA ALJ, depriving him of the opportunity to contest the proposed revocation of his DEA registration. (Id. at 16-19.)
>
> 3. Unlawful Agency Overreach (Count III): Defendants exceeded their statutory authority under the Controlled Substances Act (CSA) by promulgating and enforcing regulations that improperly intrude upon states' authority to regulate the practice of medicine and penalize practitioners based on discretionary agency-created prescribing standards. (Id. at 19-20.)
>
> 4. Separation of Powers Violation (Count IV): Defendants subjected Dr. Rifai to an administrative proceeding before a DEA ALJ unconstitutionally insulated by two layers of for-

5

>cause removal protections, violating Article II's separation of powers. (Id. at 20-21.)
>
>5. Injunctive Relief Based on Structural Harm (Count V): Dr. Rifai seeks injunctive relief to prevent his continued subjection to an unconstitutional administrative process, independent of any final agency action or adjudication. (Id. at 21.)
>
>6. Declaratory Judgment (Count VI): Rifai seeks a declaration that the DEA's enforcement of the CSA, as applied to the facts of this case, is unconstitutional. (Id. at 22.)

[ECF 29 at ¶ 14-22.]

## **DEA REGULATORY REGIME**

The Controlled Substances Act (CSA) and its implementing regulations create restrictions on the distribution of controlled substances. 21 U.S.C. §§ 801, *et seq.*; 21 C.F.R. §§ 1300, *et seq.* The CSA requires all persons who dispense controlled substances to obtain a registration from the Attorney General. See 21 U.S.C. § 822(a). The Attorney General has delegated this registration authority to the DEA. See 28 C.F.R. § 0.100.

The DEA Administrator may suspend or revoke a license on various grounds, including a "finding that the registrant ... has committed such acts as would render his registration under section 823 of this title inconsistent with the public interest as determined under such section." 21 U.S.C. § 824(a)(4). Before revoking a registration, the DEA must issue a rule to show cause describing the grounds for revocation and conduct a hearing in accordance with the Administrative Procedures Act. *Id.* § 824(c); 21 C.F.R. § 1301.37(c). Following the hearing, the presiding ALJ issues a report recommending findings of fact and conclusions of law; the ALJ forwards this report and the administrative record to the DEA Administrator. *Id.* § 1316.65(a),(c). The

Administrator, as the Attorney General's delegate, then issues a final order, supported by findings of fact and conclusions of law. *Id.* § 1316.67. The CSA further provides that the DEA's "final determinations, findings, and conclusions" under the CSA "shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision" of the DEA "may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision." 21 U.S.C. § 877.

## **DISCUSSION**

Defendants claim there has been no "final decision" by the DEA for the Court to review and, in any event, exclusive jurisdiction over Rifai's claims lies in the appropriate court of appeals pursuant to 21 U.S.C. § 877. The Court agrees.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In addition, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

Generally, such review of a federal agency action occurs in federal district court. However, Congress can "divest[ ] district courts of their ordinary jurisdiction" by substituting "an alternative scheme of review" within an agency—where the agency's final decision is reviewable by an Article III court of appeals.[1] *Axon Enter., Inc. v. FTC*, 598

---

[1] The Court agrees with Defendants that there has been no final agency decision in this case since the DEA Administrator has not issued a final order supported by findings of fact and conclusions of law. 21 C.F.R. section 1316.67. The DEA stated as much when it recently advised the government that if it "wishes to pursue this matter, it may file a new request for final agency action that contains substantial

7

U.S. 175, 185, (2023).  Sometimes Congress does so in explicit terms, "providing in so many words that district court jurisdiction will yield." *Id.* Other times, it does so implicitly, leaving open the question whether the statutory review scheme is exclusive. *Id.*

With regard to section 877, Congress did not explicitly foreclose district court jurisdiction. Therefore, the Court must inquire as to whether Congress implicitly foreclosed district court jurisdiction

To determine whether Congress implicitly divested a federal district court of jurisdiction, the Court must engage in a two-part analysis. The Court first asks whether it is "fairly discernible" from the "text, structure, and purpose" of the statutory scheme that Congress intended to preclude district court jurisdiction. *Elgin v. Department of Treasury,* 567 U.S. 1, 10 (2012)(quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).The Court then asks whether the "claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 212. **)**

With respect to the first question, the Court finds that it is indeed "fairly discernable" from "the text, structure, and purpose" of the statutory scheme that Congress intended to preclude district court jurisdiction. Congress specifically stated that a party "aggrieved by a final decision" of the DEA Administrator may then appeal to the Court of Appeals for the District of Columbia Circuit or for the circuit in which the party's principal place of business is located. 21 U.S.C. § 877. Conspicuously absent from the statute is any language referencing the district court. If Congress intended for the district court to

---

record evidence supporting the denial of Respondent's registration on the grounds noted in the OSC." ECF 35-1, pp. 9-10.

get involved in any part of the process, it could have easily so stated. It did not. *Morris & Dickson Co. v. Whitaker*, 360 F. Supp. 3d 434, 443 (W.D. La. 2018) ("[T]the CSA nevertheless reflects an intent to force claims related to DEA registrations to proceed through an administrative process before judicial review begins in an appeals court.")

With respect to the second question, the Supreme Court has identified three "factors," sometimes referred to as the "*Thunder Basin* factors," for courts to consider. *See Thunder Basin*, 510 U.S. at 212–13,  Specifically, the Court asks (1) whether precluding district court jurisdiction "could foreclose all meaningful judicial review"; (2) whether plaintiff's "suit is wholly collateral to a statute's review provisions"; and (3) whether the claims are "outside the agency's expertise." *Elgin*, 567 U.S. at 15,  (quoting *Free Enter. Fund,* 561 U.S. at 489, ; *Thunder Basin*, 510 U.S. at 212–13, ).

The Supreme Court in *Axon* cited its previous decisions in *Thunder Basin* and *Elgin* as examples of the Court applying the *Thunder Basin* factors and concluding that since the challenges in both cases were to a "specific substantive decision" of an agency or the "commonplace procedures agencies use to make such a decision." *Axon,* 598 U.S. at 189**,** such as fining a company **(***Thunder Basin***)** or firing an employee (*Elgin*), the district court lacked collateral jurisdiction over the claims. On the other hand, the *Axon* Court cited its previous decision in *Free Enterprise* as an example of a challenge "to the structure or very existence of an agency" and therefore the district court had collateral jurisdiction to hear the plaintiff's constitutional claims. *Id.* The issue in *Free Enterprise* involved a challenge to double-for-cause removal protections for ALJs, in violation of Article II's Vesting Clause. 561 U.S. at 484.

9

Since the challenge raised in Axon also involved double-for-cause removal protections, in violation of Article II's Vesting Clause as well as a combination of prosecutorial and adjudicatory functions in a single agency, in violation of separation-of-powers principles, the *Axon* Court concluded that the matter before it was more aligned with *Free Enterprise* than with *Thunder Bay* and *Elgin.*

The *Axon* Court then noted that "being subjected to unconstitutional agency authority" in an administrative proceeding such as an ALJ enjoying double-for-cause removal protection is a "here-and-now injury." *Id.* at 191. (internal quotation marks and citation omitted). The Court further stated that since "[a] proceeding that has already happened cannot be undone," an agency's direct review scheme should pose no independent bar to district court jurisdiction. *Id.* In other words, a person subject to such proceedings by an ALJ has a "right[ ] not to undergo the complained-of agency proceedings" and should be able to assert that right on collateral review in district courts. "The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker and as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Axon,* 598 U.S. at 191.

In the first instance, unlike in *Axon*, Rifai is simply not challenging the structure or very existence of the DEA in any of the first three counts in the SAC. Rather, Rifai claims the Defendants violated his Fourth Amendment rights through the issuance of an administrative subpoena (Count One), the DEA ALJ violated his Fifth Amendment procedural due process rights by terminating the hearing process (Count Two) and that the DEA, through its regulations, has encroached on the States' authority to regulate the practice of medicine (Count Three).

Applying the *Thunder Basin* factors to this case, the Court notes that whether meaningful judicial review of a claim is available is the "most important" factor of the three *Thunder Basin* factors. *Bennett v. SEC*, 844 F.3d 174, 183 n.7. (4th Cir. 2016). The importance of this factor arises from the Supreme Court's recognition "that Congress rarely allows claims about agency action to escape effective judicial review." *Axon,* 598 U.S. at 186 .

With respect to the first *Thunder Basin* factor, if the DEA Administrator takes final action by denying Rifai's registration for the reasons stated in the DEA's Order to Show Cause, Rifai will still have access to meaningful judicial review since he will be able to raise all of his constitutional claims with the proper Court of Appeals.

With respect to the second factor, despite being constitutional in nature, Rifai's claims are nevertheless the very vehicle by which he seeks to reverse DEA's administrative actions. As result, his claims cannot be construed as "wholly collateral." See *New Jersey Conservation Foundation v. Federal Energy Regulatory Commission*, 353 F. Supp. 3d 289, 307 (D.N.J. 2018).

With the respect to the third *Thunder Basin* factor, the Court is aware that "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicator's area of technical expertise." *Carr* v. *Saul*, 593 U. S. 83, 92 (2021). Yet, resolution of all of Rifai's constitutional claims requires consideration of DEA administrative procedures such as its ability to issue subpoenas, the ability of the DEA ALJ to terminate Rifai's administrative procedure, and by enforcing regulations that improperly intrude upon states' authority to regulate the

11

practice of medicine. Therefore, the Court finds that none of Plaintiff's claims are outside the area of expertise of the DEA.

Having determined that Congress implicitly divested the Court of jurisdiction over the first three cause of action in the SAC, the Court turns to Rifai's fourth cause of action.

Rifai's fourth cause of action could conceivably fall within the realm of *Axon* and *Free Enterprise* because, like the plaintiffs in *Axon* and *Free Enterprise*, Rifai contends that the Defendants subjected him to an administrative proceeding before a ALJ unconstitutionally insulated by two layers of for-cause removal protections, thereby violating Article II's separation of powers.[2]

However, our Court of Appeals recently stated that *Axon* and its "here-and-now-injury" theory only applies in cases where, unlike here[3], the administrative agency procedures had not yet commenced. *National Labor Relations Board v. Starbucks Corp.*, 125 F. 4th 78, 88 (3d Cir. 2024). In a case where the administrative procedures had commenced, a petitioner would still have to establish actual harm or standing. "To establish [standing], a litigant must demonstrate that [he] was injured in fact, that the injury is "fairly traceable" to the challenged conduct, and that the injury will be "redressed by a favorable decision" from the court. *Starbucks Corp.*, *id*. quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) Even more recently, our Court of Appeals in *McCarthy* v.

---

[2] **"**DEA ALJs are removable by the Attorney General 'only for good cause established and determined by the Merit Systems Protection Board.' McCarthy quoting 5 U.S.C. § 7521(a) (first layer). Members of the Merit Systems Protection Board, in turn, are removable by the President, but 'only for inefficiency, neglect of duty, or malfeasance in office.'" *McCarthy* at * 2 quoting 5 U.S.C. § 1202(d) (second layer)**.**

[3] Rifai filed an answer to the Order to Show Cause and requested that DEA hold an administrative hearing. Rifai also filed a prehearing statement in the administrative proceeding. The fact that he never received a hearing before the ALJ on the merits is due to the self-inflicted actions of his counsel. All that is left is for the DEA Administrator to issue a final order, supported by findings of fact and conclusions of law. *Id.* § 1316.67.

*United States Drug Enforcement Agency*, 2025 WL 2028399 (3d Cir. July 21, 2025) stated:

> In order to bring a removal-protection challenge, a litigant "must show that the constitutional infirmity actually caused harm." *NLRB v. Starbucks Corp.*, 125 F.4th 78, 88 (3d Cir. 2024) (petitioner failed to link removal-protection infirmity to an actual harm and therefore could not bring challenge); see also *CFPB v. Nat'l Collegiate Master Student Loan Tr.,* 96 F. 4th 599, 607 (3d Cir. 2024) ("[A]ctions taken by an improperly insulated director are not 'void' and do not need to be 'ratified' unless a plaintiff can show that the removal provision harmed him." (quoting *Collins v. Yellen*, 594 U.S. 220, 259 (2021))). Stated differently, a litigant must show a causal "link" between the asserted removal-protection-infirmity and an actual harm. *Nat'l Collegiate*, 96 F.4th at 615; see *Starbucks Corp.*, 125 F.4th at 88–89. McCarthy argues that the revocation of his COR is a greater injury than the injury at issue in Starbucks, but he fails to address the requisite causal link. McCarthy does not show, or even argue, that his injury would have been lessened or eliminated if the ALJ did not have unconstitutional removal protections. Accordingly, his removal-protection challenge fails. See *Starbucks*,125 F.4th at 88; *Nat'l Collegiate*. 96 F. 4th at 415.

*McCarthy*, at * 3. Similarly, Rifai does not show, or even argue, that his injury would have been lessened or eliminated if the ALJ was not unconstitutionally insulated by two layers of for-cause removal protections.

In addition, the Court notes that the ALJ was properly appointed and operating within her jurisdiction. The DEA's administrative review process by a lawfully appointed ALJ is not inherently voided by the alleged unconstitutionality of the ALJ removal provisions. *MMJ BioPharma Cultivation Inc. v. Bondi*, 2025 WL 949233, *2 (D.R.I. Mar. 28, 2025). ("That is, because an officer is unconstitutionally protected from removal does not mean that they lack constitutional authority to carry out the role for

which they were appointed.". . ."[E]ven if DEA ALJs have unconstitutional removal protections, that alone does not automatically render proceedings before them void,"

For all the foregoing reasons, the Court finds that it does not have collateral jurisdiction over this matter and that the matter must be concluded before the DEA administrator after which Petitioner will, if still needed, have a meaningful judicial remedy in the appropriate Court of Appeals. As a result, the Complaint will be dismissed for lack of subject matter jurisdiction.